[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 54 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 56 
Before the statute 22 H. VIII, ch. 5, the duty of repairing bridges rested upon the county, where no private person or other body was specially charged with that duty. The charge was upon the whole county, because bridges were regarded as for the common good and ease of the whole county. (2 Inst., 700, 1.) The statute cited affirmed the common law rule in this point, adding certain provisions for its better enforcement. But neither this statute nor the rule of the common law was ever adopted in this state. As early as 1784 (1 Greenleaf, 105), the care and reparation of highways, including bridges, was committed to town officers. Ch. 186 of the Laws of 1801 (1 W. and S., 588) amends and improves the same system, and section 26 of that act (p. 599) contains in substance the provisions which, again reënacted in the revision of 1813 (2 R.S., 281, § 33), were finally embodied in the Revised Statutes (1 R.S., 524, § 119), and which authorize the board of supervisors of any county, when it shall appear that any of the towns are unreasonably burthened by the duty of erecting or repairing bridges therein, to raise money from the county at large to defray, wholly or in part, the expense of such erection or repair.
The same view of the law of this state was taken by the chancellor in the court for the correction of errors, inBartlett v. Crozier (17 J.R., 439). It must, I think, be considered as settled, at least from the time when that case was decided, that the common law responsibility of counties for the repair of bridges never prevailed in this state. Our statutory system introduced the primary responsibility of the towns in respect to the maintenance of highways and bridges; and in many cases, where the burthen was greater *Page 58 
than could conveniently be borne by the towns, particular acts of the legislature have provided for the means and method of erecting and keeping in repair the public bridges.
At the time of the passage of the act of 1838 (Sess. Laws,ch. 314, p. 314), the provisions of the Revised and other statutes in force, upon this subject, were in substance these; The commissioners of highways in the several towns had the care and superintendence of the bridges therein, and it was their duty to give directions for the repair of roads and bridges, and to cause highways and bridges over streams intersecting highways to be kept in repair. (1 R.S., 501, § 1.) The board of supervisors were bound to cause to be levied in any town a sum not exceeding $250 in any year, upon an estimate made for that purpose by the commissioners of highways, for the improvement of roads and bridges. (1 R.S., 502, § 4.) A further sum of $250 or less in any one year might be raised, upon the vote of the town in town meeting for that purpose, by the board of supervisors. (Laws of
1832, ch. 274.) These were all the general provisions in force authorizing a money tax upon the towns for roads and bridges; and these, with the provision before referred to, authorizing boards of supervisors to relieve overburthened towns by a county tax not exceeding $1000 in any year, for erecting or repairing bridges, constituted the whole of the regular system of raising money by tax applicable to the repair of bridges. All these moneys were to pass into the hands of and be expended by the town officers.
The act of 1838, before cited, gave to the boards of supervisors, in addition to the powers which they then possessed, authority (1) "to cause to be levied, collected and paid, to the treasurer of the county, such sum of money as might be necessary to construct and repair bridges therein, and to prescribe upon what plan and in what manner the moneys so to be raised should be expended; and (2) to apportion the tax so to be raised among the several towns and wards of their county, as shall seem to them to *Page 59 
be equitable and just." (§ 1, subds. 1, 2.) They are further authorized, by subd. 5 of the same section, to levy such sum, not exceeding $500 in any year above that theretofore allowed by law to be raised, as a majority in town meeting have voted to be raised upon their town for constructing or repairing roads and bridges in such town.
The first question to be considered in respect to this act is, whether the two first subdivisions relate exclusively to bridges which are a charge upon the whole county. Nothing in the language of the act favors such a construction. By its terms, the only limitation of the subject in respect to which the power is to be exercised is, that the bridges are to be in the county. The number of bridges in the state, which the counties as such are bound to maintain, cannot be large. Such cases are entirely exceptional in their characters, and where they exist have arisen from special statutory provisions; the general rule being clear, that bridges like highways are to be maintained by the towns.
A very large number of special acts of the legislature had been passed between 1830 and 1838, providing for particular expenditures in the erection and repair of bridges. The greater part of these imposed the burthen upon a single town, and were only necessary on account of the smallness of the sum which, under the general law, could be raised in any town for roads and bridges. Many of these acts, however, imposed the burthen upon two or more towns, sometimes in equal and sometimes in unequal proportions. Some of the acts imposed the whole burthen of the particular erection or repair provided for upon the whole county, while others, again, imposed a part of the expense upon the county at large, and the residue, sometimes in equal and sometimes in unequal proportions, upon two or more of the towns and sometimes upon a single town. About two hundred acts in relation to bridges and bridge companies are to be found in the Session Laws during the period above referred to. Two of these acts, relating to the county of Livingston, will serve *Page 60 
to illustrate the preceding observations. Ch. 240, Laws of 1835, authorizes the board of supervisors to levy $3000 for building one bridge and $1000 for another, in such proportions among the several towns in said county as the supervisors may deem equitable and just. One of these bridges was between two towns, the other in a single town. Ch. 73, Laws of 1833, authorized the board to levy $1500 to build a bridge over the Genesee river, $300 on the town of York, $200 on the town of Avon, and the residue upon the whole county, including those towns.
These statutes did not change the general law in respect to the liability of the towns for the repair of bridges, but were exceptional in their character. Their whole operation ended with the expenditure of the money authorized to be raised, leaving the bridges, however built, to be afterwards maintained according to the general law of the state.
The general purpose of the provisions, on this subject, of the act of 1838 was to obviate the evil which had rendered necessary so frequent applications to the legislature, by conferring upon the boards of supervisors a further and new discretionary power from time to time, to aid in the construction and reparation of bridges within their respective counties. This general purpose has been effected by removing the limit of expenditure in any one year, and by enabling the board to apportion the tax among the several towns and wards as to them shall seem equitable, as well as by intrusting the board with the power of determining what bridges they will construct or repair.
I do not think it necessary in this case to consider whether the board might entirely exonerate some of the towns in the county from bearing any part of such a tax; viewing the whole action of the board upon this subject at once, we find $900 raised from the county at large and the residue charged upon the towns of Avon and Caledonia. This in any view of the statute is a good exercise of the power of apportionment conferred by the 2d subdivision of § 1. I am therefore *Page 61 
of opinion that the tax in question was rightfully imposed by the board of supervisors, and that upon the merits, without examining the other objections, the plaintiff must fail
The judgment of the supreme court should be reversed and judgment rendered on the special verdict for the defendant, with costs.
GARDINER, Ch. J., PARKER, SELDEN and EDWARDS, Js., concurred.