JEREMIAH BRIDGES, as Supervisor, etc., Appellant and Respondent, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF SULLIVAN, Appellant and Respondent.

Under the provision of the act (Chap. 296, Laws of 1874) subjecting the property of the N. Y & O. M. R. R. Co. to taxation, and appropriating the amount of the county taxes thereon, in any town which has issued bonds in aid of the construction of the road of said company, to such town, to be devoted to the payment of its bonds, after any such tax has been collected, the moneys belong to the town, and any diversion thereof from their lawful object is an injury to the rights of the town, which may be protected by an appropriate action in its behalf.

The town is not confined to the remedy given by the act (§ 4), *i. e.*, an action against the collector and the sureties upon his bond.

The action on behalf of the town might, under the Revised Statutes (2 R. S. 473, § 92), have been properly brought by the supervisor of the town, and may be so brought under the Code of Civil Procedure (§ 1926).

Where, therefore, the warrant issued to the collector of such a town required him to pay over the moneys so collected to the county treasurer, which command the collector obeyed, instead of paying the amount col-

lected to the railroad commissioners of the town, as prescribed by the act (§ 3), *held*, that an action as for moneys had and received was properly brought by the supervisor of the town against the board of supervisors of the county to recover the amount so paid.

*People, ex rel. Martin,* v. *Brown* (55 N. Y. 180), distinguished.

Also *held*, that it was no defense to the action that the county had received no more money from the town for taxes than it was entitled to receive under the general statutes of the State; that it was the duty of the board of supervisors, in making an apportionment of the taxes for county purposes, after the passage of said act, to lay out of view the amount so withdrawn by the act and to assess generally, upon the county at large, a sufficient sum to cover the county charges, in addition to the tax for county purposes levied upon the property of the railroad, in the towns specified.

But *held*, that the act only appropriated to the towns that portion of the taxes in question known and described as county taxes; that they were not entitled to receive the portion collected for State purposes.

(Argued May 2, 1883 ; decided June 5, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 2, 1882, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 27 Hun, 175.)

This action was brought by plaintiff, as supervisor of the town of Liberty, in the county of Sullivan, to recover, in behalf of the town, the county taxes assessed upon the property of and collected from the New York and Oswego Midland Railroad Company, during the years 1874 to 1878 inclusive, under the act chapter 296, Laws of 1874, to which the town claimed a right under said act.

The collector of said town, obeying the direction of the warrants issued to him, paid over said taxes to the county treasurer, who refused to pay the same over to the railroad commissioners of the town, as did also defendant, the board of supervisors.

The amount of taxes for State and county purposes so collected and paid over, during the years specified, was $2,303.26, of which sum $745.93 was for State purposes. The trial court decided that plaintiff was entitled to recover the full amount, with interest from the time of the demand. The General

Term modified the judgment by deducting therefrom the amount collected for State purposes, with interest.

*Samuel Hand* for appellant. As a corporation the town of Liberty has no right to or interest in the money raised or appropriated to pay interest or principal on said bonds, and, of course, cannot sue for it as for money had and received. (*People, ex rel. Martin,* v. *Brown,* 55 N. Y. 180, 187; *Lorillard* v. *Town of Monroe,* 11 id. 399; *Gaillor* v. *Herrick,* 42 Barb. 79–85; *Gallatin* v. *Loucks,* 21 id. 578; *Murdock* v. *Aiken,* 29 N. Y. 67; *Ross* v. *Curtis,* 31 id. 606; *First Nat. B'k* v. *Wheeler,* 72 id. 201; Laws of 1866, chap. 398, §§ 4, 7, 8; Laws of 1874, chap. 296, § 2.) When a statute creates a new right unknown to the common law, and gives a remedy, he who would claim the right of the statute must pursue the remedy given by it. In such case the remedy given by the statute is exclusive. (*Durant* v. *Supvrs. of Albany Co.,* 26 Wend. 90; *Dudley* v. *Mayhew,* 3 N. Y. 9, 16; *McKean* v. *Caherty,* 3 Wend. 495; *Renwick* v. *Morris,* 7 Hill, 575; *Alma* v. *Harris,* 5 Johns. 175; *Stafford* v. *Ingersoll,* 3 Hill, 39; *Weyburn* v. *White,* 22 Barb. 83; *Bevens* v. *Rood,* 2 Sandf. 436; *Fowler* v. *Van Surdam,* 1 Denio, 557; *First Nat. B'k* v. *Whitehall,* 57 Barb. 429; *Smith* v. *Lockwood,* 13 id. 209– 217; *Matter of B'k of Buffalo,* 2 Keyes, 249; *Handley* v. *Moffat,* 21 W. R. 231; *St. Pancras* v. *Battenbury,* 2 C. B. [N. S.] 477; 3 Jur. [N. S.] 1106; 26 L. J. C. P. 243; *Miller* v. *Taylor,* 4 Burr. 2305.) If the remedy provided by the fourth section of the act of 1874 is not exclusive, there can be no doubt that the remedy should have been by *mandamus* to compel the town collectors to pay the money to the railroad commissioners, and the proceedings should be in their favor. (*People* v. *Brown,* 55 N. Y. 180; Moses on Mandamus, 99; *Adsit* v. *Brady,* 4 Hill, 630.) The duties imposed by the tax laws upon boards of supervisors, of examining the assessment-rolls and equalizing the valuations of real estate, and setting down in the assessment-roll the respective sums to be paid as taxes, are judicial. (*Bellinger* v. *Gray,* 51 N. Y. 610; *Barhyte* v.

*Shepherd*, 35 id. 238; *Hill* v. *Selick*, 21 Barb. 207; 1 R. S. [Banks' 6th ed.] 942 ; *People* v. *Supv'rs of Schenectady*, 35 Barb. 408; *Swift* v. *City of Poughkeepsie*, 37 N. Y. 511.) The board of supervisors have received no money belonging to the town, and have done nothing which they not only had no right, but which they were not compelled by direct statute to do. (Laws of 1874, chap. 296; 1 R. S. [Banks' 6th ed.] 135, 942, 948 ; *People* v. *Hillhouse*, 1 Lans. 87 ; *Bellinger* v. *Gray*, 51 N. Y. 619 ; *Swift* v. *City of Poughkeepsie*, 37 id. 511; *City of Rochester* v. *Town of Rush*, 80 id. 302.) The railroad property in the county and in the town of Liberty, because it is subject to assessment and has been returned by the town officer himself as part of the assessable property of the town, could not be left out of a levy by the supervisors. (1 R. S. [Banks' ed.] 929, § 11 ; id. 943, §§ 49–53 ; id. 396, § 37.) The acts of 1866 and 1874 are in *pari materia*, and should be construed together. (*Smith* v. *People*, 47 N. Y. 330; *Rogers* v. *Bradshaw*, 20 Johns. 735 ; *Rexford* v. *Knight*, 15 Barb. 627.) The decision of the board of supervisors could only be reversed by appeal to the State assessors or perhaps by *certiorari*. (*Halsey* v. *Mancius*, 7 Johns. Ch. 174; *People* v. *City of Brooklyn*, 49 Barb. 136 ; *White* v. *Coatsworth*, 6 N. Y. 137; *Embrey* v. *Conner*, 3 Comst. 511 ; *People* v. *Sturtevant*, 15 Seld. 263–266 ; *Wilcox* v. *Jackson*, 13 Peters, 511; 1 R. S. [Banks' 6th ed.] 946–949.) The moneys sought to be recovered having been received in good faith by the county treasurer, under the direction of the board of supervisors, and in the discharge of his duty, and paid out by him under provisions of law, cannot be recovered back. (1 R. S. [6th ed.] 957 ; *Shotwell* v. *Murray*, 11 Johns. Ch. 512 ; *Lyons* v. *Richmond*, 2 id. 51 ; *Clark* v. *Dutcher*, 9 Cow. 674; *Champlin* v. *Taylor*, 18 Wend. 407.)

*T. F. Bush* for respondent. By force of the act of 1874 (Chap. 296), the amount of county taxes collected from the railroad property in plaintiff's town became the property of the town as soon as it came to the hand of the collector.

(*Newman* v. *Supvrs. of Liv. Co.*, 45 N. Y. 676.) The money having been paid to the county treasurer and by him used for the benefit of the county, a cause of action accrued to the town for money had and received to its use. (*B'k of Commonwealth* v. *Mayor*, 43 N. Y. 186 ; *Chapman* v. *City of B'klyn*, 40 id. 372; *Hill* v. *B'd of Supvrs.*, 12 id. 61; *Newman* v. *Supvrs. of Liv. Co.*, 45 id. 676 ; *Dewey* v. *Supvrs. of Niagara Co.*, 2 Hun, 392 ; *Union Nat. B'k* v. *Mayor*, 51 N. Y. 637 ; *Town of Lewis* v. *Marshall*, 56 id. 663 ; *Town of Chautauqua* v. *Gifford*, 8 Hun, 152; *Hathaway* v. *Town of Cincinnatus*, 62 N. Y. 434.) The action was properly brought in the name of the supervisor. (*Hathaway* v. *Town of Cincinnàtus*, 62 N. Y. 434 ; *Hathaway* v. *Town of Homer*, 54 id. 655 ; 5 Lans. 267 ; *Town of Chautauqua* v. *Gifford*, 8 Hun, 152 ; *Town of Guilford* v. *Cooley*, 58 N. Y. 121.) The amount required from the county by the State each year for general State purposes is charged to the county and becomes a county debt. (*Merchants' Nat. B'k* v. *Supvrs. of N. Y.*, 3 Hun, 156 ; Affirmed, 62 N. Y. 629; 1 Statutes at Large, 359.) The intention of the law-maker is to be sought, first of all, in the language employed, and if the letter of the statute is free from ambiguity there is no occasion to resort to other means of interpretation. (*People* v. *N. Y. C. R. R. Co.*, 13 N. Y. 78; *Jackson* v. *Lewis*, 17 Johns. 477 ; *Benton* v. *Wickwire*, 54 N. Y. 226 ; *McCluskey* v. *Cromwell*, 11 id. 602.) The acts of 1874 and 1871 (Chap. 283) are in *pari materia*, and may be examined together to ascertain the intention of the legislature. (Bacon's Abr., title Stat., 1, 5, 10 ; *People* v. *Utica Ins. Co.*, 15 Johns. 358 ; *Dresser* v. *Brooks*, 3 Barb. 429 ; *Goodrich* v. *Russell*, 42 N. Y. 177 ; *Plummer* v. *Murry*, 51 Barb. 201 ; *Smith* v. *People*, 47 N. Y. 330 ; *Rogers* v. *Bradshaw*, 20 Johns. 735.) The fact that this statute prevents these moneys from going into the State treasury, or under its management, is quite different from an act taking money " out of the treasury of the State" or from under its management. (*Wallack* v. *Mayor of N. Y.*, 3 Hun, 84 ; *Darlington* v. *Mayor*, 31 N. Y. 164.) The general right

to make exemptions is involved in the right to tax and to apportion taxes, and must be understood to exist wherever it is not forbidden. (Cooley on Taxation, 145.)

Ruger, Ch. J. This action was properly brought in the name of the supervisor of the town. Section 92 of article 4, title 4, chapter 8 of the third part of Revised Statutes expressly gives a right of action to the supervisors of towns for any injuries done to the property or rights of such officers or of the bodies represented by them. This right of action was continued in such officers by section 1926 of the Code of Civil Procedure upon the repeal of the provisions of the Revised Statutes. The action having been commenced prior to the adoption of the Code, the existing legal rights of the parties were by express provision preserved, and will, therefore, be governed by the provisions of the Revised Statutes if upon examination it appears that any injury has been done to the rights of the town represented by the plaintiff.

The supervisor of a town is in a general sense its treasurer. He is entitled to receive all moneys raised for town purposes except those which are expressly directed to be paid to the town officers having charge of highways and bridges, schools and the support of the poor. (1 R. S. [7th ed.], § 1, p. 826.) He is also directed to pay all judgments recovered against the town from any moneys in his hands which are not otherwise specially appropriated. (3 R. S. [7th ed.], § 106, pp. 2403–4.) The statute thus assumes that he is the legal custodian of the moneys of the town and chargeable with the duty not only of receiving and keeping them, but also of guarding their disbursement, and also recognizes to a certain extent the corporate existence of towns and their capacity to hold property, to protect its possession, and to enforce their *quasi* corporate rights by appropriate action.

It has been urged that the case of *People, ex rel. Martin,* v. *Brown* (55 N. Y. 180) is an authority against this position. That was an application by the railroad commissioners of the town of Hancock against the town collector, who had received the taxes

assessed upon its tax payers, to compel him to pay over a part thereof to them for application upon the town bonds. The act under which such taxes were collected (§ 4, chap. 398, Laws of 1866), as well as the warrant of the supervisors authorizing such collection expressly directed the collector to pay a certain portion of such tax to the railroad commissioners for the purpose of satisfying the claims of the bondholders of the town for current interest on its obligations. The act gave the town, as such, no interest in the moneys collected and they were levied and gathered by agencies beyond its direction or control. It was held that such moneys did not become the property of the town, and, therefore, their payment to the supervisor of the town by the collector was a violation of his duty as prescribed by the warrant of the supervisors. Judge Andrews, delivering the opinion of the court, says: " The supervisor of the town has, under the act of 1866, no duty to perform in respect to the disbursement of the money raised for railroad purposes in the town." " The money does not belong to the town. It was not collected out of its corporate property or by its direction, nor is it liable for the act either of the board of supervisors or of the collector in levying or collecting it."

This case as well as all others cited on this point are clearly distinguishable from the present one. Here the warrant of the supervisors required the collector to pay the sum collected from the railroad corporation to the county treasurer instead of the railroad commissioners. This was an unauthorized direction. The act authorizing the imposition of the tax (Chap. 296, Laws of 1874) expressly gives to the town in its capacity as a *quasi* corporation the right to and benefit of money so collected. Section 2 of said act reads : " All moneys to be collected upon the real or personal property of the said corporation in any of the towns or municipalities by which bonds have been issued in aid of the construction of the New York and Oswego Midland railroad *are hereby appropriated to said towns or municipalities respectively*." Although such moneys are by the act specially devoted to the purpose of paying the principal and interest upon the bonds of the town and cannot

be legally diverted from such purpose, yet the equitable if not the legal title of the town to them, until they are finally applied to such object, cannot be questioned. After their collection, such moneys, whether in the hands of the collector, supervisor or railroad commissioners are the property of the town, and any diversion from their lawful object and purpose by any person occasions an injury to the rights of the town which may be protected by an appropriate action in its behalf, brought in the name of the officer authorized to institute the same. Whatever question might arise upon a conflict of authority between the supervisor and railroad commissioners over the custody and possession of such moneys, it is immaterial in this case to discuss. It is enough to say here that the rights of the town have been invaded and that the supervisor is a proper person to bring an action for the protection of such rights. (*Hathaway* v. *Town of Cincinnatus,* 62 N. Y. 434.) It was also claimed that this statute created a new right unknown to the common law, and having given a remedy for the protection of such rights, that it was exclusive and none other could be pursued in case of the invasion of this right. The grounds upon which this argument was attempted to be supported were that the exemption from taxation of the property of the New York, Oswego and Midland Railroad Company, created by the act of 1866, having been removed by the act of 1874, and that act having extended the liability of the sureties on the bond of a town collector to failure to pay over the taxes collected from such corporation, in addition to their liability on account of a default in paying over the general taxes of the town, that a new right was created, and the only remedy for a violation of such right arose upon the collector's bond. It is perhaps sufficient to say in answer to this claim that the new right, if any, which was created related to the enforcement of the payment of taxes against the railroad corporation alone, and not to the liability of the collector to account for the property of the town after it had come into his possession. That was not a right created by the statute, but existed at common law and the remedy provided had no reference to the rights which the town

had previously acquired in the moneys so collected.    (*Almy* v. *Harris*, 5 Johns. 175 ; *Stafford* v. *Ingersol*, 3 Hill, 38.)

The right of the town to the moneys collected having become perfected upon their receipt by the collector from the railroad corporation it became entitled to the same remedies for the protection of its rights of property as exist for the enforcement of similar rights in the case of individuals.    The rules regulating the rights of owners of property attached to these moneys when they came into the collector's hands, and the town was authorized to pursue any remedies, which any property-owner lawfully might, to establish its interest in such property.    The embezzlement of such funds would be punishable criminally, and the moneys themselves could be pursued into the hands of third persons and reclaimed by appropriate civil action.    The principle contended for would apply only in favor of the party as against whom the new right was created ; it certainly could not be invoked by a wrong-doer as against the party whose right under the statute had ripened into a vested interest.

It is further argued that this action cannot be maintained for the reason that the county of Sullivan has received no more money from the town of Liberty for taxes than it was justly entitled to receive under the general statutes of the State.    In other words, it is claimed that being entitled to assess upon the tax payers of the town of Liberty their proportionate share of the taxes required to be raised in the county of Sullivan for county purposes, and having collected and received no more than such share from the collector of that town, they are not liable to refund to the town any part of the moneys so received by them.

This action was brought to recover from the defendant the amount collected from the New York and Oswego Midland Railroad Company in the town of Liberty as taxes for county purposes which had been paid over to the county treasurer during the years 1874, 1875, 1876, 1877 and 1878 by the collector of such town.    The right of the town to this money was claimed to have been conferred by chapter 296 of the

Laws of 1874. That statute provides in the first place for the repeal of the law exempting the property of the New York and Oswego Midland Railroad Company from the operation of the general laws of the State imposing taxation upon property; it then proceeded to appropriate a portion of the taxes thereafter to be levied and collected from the property of such railroad to the several towns and municipalities respectively which had issued bonds in its aid. Then follows this section: "It shall be the duty of the collector of taxes of each such town or municipality to pay over to the said commissioners of his town or municipality the amounts of the county taxes collected by him from the said corporation on the real and personal property thereof within five days from the time the same is collected, and the said commissioners shall give to the said collectors a receipt for the amount of county taxes so received, which said receipt shall be returned to the treasurer of the county in which the said collector shall reside."

This act is not assailed as being unconstitutional, and no reason is alleged by the appellant justifying any disobedience to its provisions by any person or officer who is thereby required to perform any duty. The language of the act is plain and unambiguous, and there seems to be no insuperable difficulty in the way of carrying out its provisions.

The object of the act was, evidently, to confer exclusively upon the several towns in the State who have aided in the construction of this railroad the benefit of the taxes from the increased value given to property by its appropriation and use for railroad purposes and which was derived by means of their liability. That portion of the tax authorized to be levied upon such property for county purposes was in each year expressly directed by the act to be withheld from the county where it would otherwise have gone, and paid over to the railroad commissioners of the several towns respectively entitled thereto for their use and benefit.

The plain duty of the board of supervisors was, therefore, in making an apportionment of taxes among the several towns of the county for county purposes in each year subsequent to

the passage of the act, to lay out of view the several amounts thus withdrawn from them by the act of 1874 and to assess generally upon the county at large a sufficient sum to cover the county charges in addition to the taxes for county purposes levied upon railroads.

The statute not only authorized but enforced this upon the board of supervisors in the several counties through which this railroad was laid and wherein towns were bonded in its aid, and authorized the insertion in their warrants issued for the collection of taxes appropriate provisions to carry out the object of the act. Thus it was held in *People, ex rel. Martin,* v. *Brown (supra)*, that chapter 398 of the Laws of 1866, authorizing the collection of taxes for the payment of interest upon bonds issued by the several towns of the State in aid of the New York and Oswego Midland railroad, and the payment of such taxes to town railroad commissioners, gave authority to the board of supervisors to change the general form of their warrants as prescribed by the Revised Statutes and to insert therein a direction to the collector to pay such moneys to the railroad commissioners of the towns.

The defendants here, instead of requiring the collector of the town of Liberty to pay the taxes in question to their railroad commissioners as the statute imperatively demanded, directed him to pay such moneys to their own treasurer, and the town collector for the years specified has obeyed such direction and paid these moneys into the county treasury. The moneys thus specifically given to the town by the statute have been appropriated by the county to its own use, and it is no answer to an action to recover them back to plead that the county has received no more money than the law entitled it to levy upon and collect from the county at large. The question relates to these specific moneys. The county is neither entitled to these moneys nor to an equivalent amount from the town of Liberty. It is entitled to receive from the tax payers of that town only that proportion of such amount which its assessed valuation bears to the aggregate valuation of the taxable property of the whole county, and this amount is collectible only

through the general tax levy. The only question here is to whom, "*Ex æquo et bono*," do the specific moneys levied from the railroad corporations for county taxes during the years named belong. We think that they unquestionably belong to the town. The county has simply failed to collect a sufficient sum to pay its county charges for the several years during which it has unlawfully appropriated the moneys of the town to its own uses. It should now refund them to the town to whom the statute gave them, and an action for money had and received is the appropriate remedy to accomplish this result. (*Hill* v. *Board of Supervisors*, 12 N. Y. 52; *Newman* v. *Supervisors of Livingston Co.*, 45 id. 676; *Dewey* v. *Board of Supervisors of Niagara Co.*, 62 id. 294.)

The question raised by the plaintiff as to the amount of the recovery was correctly disposed of by the General Term. The statute under which this action is brought recognizes and describes four purposes of taxation, viz.: State, county, town and municipal. When it appropriates to the town that portion described as county taxes it obviously means to distinguish the sum given from the other objects of taxation described in the same act.

There is no reason for supposing that the legislature intended to use the same word in the same act to convey two manifestly different meanings.

We are, therefore, of the opinion that the judgment should be affirmed, and as each party has failed in his appeal, no costs should be awarded to either in this court.

All concur.

Judgment affirmed.