Mayham, J.
The above entitled actions grew out of a similar state of facts involving the same legal questions, and may properly be considered together, as the decision of one disposes of the legal questions raised in all the others.
The actions are to recover money in each case collected by taxation on the New York & Oswego Midland Railroad Company and its successor the New York, Ontario & Western R. R. Co. in said towns, respectively, which was used by the county treasurer for the use and benefit of the company, which it is claimed by the plaintiff belonged to the individual towns.
*839 The case shows that in each of the years 1874 to 1887, both inclusive, the assessors of each of the towns in Sullivan county made, completed, verified and delivered to the supervisor of their town an assessment roll of the real and personal property of their respective towns as required by statute, including the property •of the Mew York & Oswego Midland Railroad in the town through which it passed, which were the towns mentioned respectively in the above entitled actions, and that such assessment rolls formed the basis of the equalization of assessments made by the board of supervisors in each of said years.
Upon the basis of such assessment and equalization the board ■of supervisors, at its annual meeting during the period above stated, levied such state taxes as were apportioned to the county ratably among the several towns thereof, including those for which the above entitled actions are prosecuted.
The money raised from such levy by the tax upon the aforesaid railroad, with all the other taxes collected in said towns, were by •the several collectors thereof, as directed by the warrant issued to them by the board of supervisors, paid to the various persons and -officers therein designated.
The money raised for the support of roads and bridges to the commissioner of highways, the money to defray town expenses to the supervisor, the money to pay the interest on town bonds issued in aid of construction of such railroad, to the railroad commissioners, and the money raised for state and county tax and for town poor to the county treasurer of Sullivan county, and all the tax levied upon and collected from the said railroad in each of the said towns in any of the years above specified were paid over as above set forth. Each of the towns was duly represented each year in the board of supervisors of the county and took part in the equalization of the assessments of the county and in levying the tax upon the property of the towns, including the •railroad in the towns through which the railroad ran, which were bonded in aid of its construction. Mo proceedings were commenced or prosecuted against the county treasurer to compel him to comply with the provisions of § 4 of chapter 907 of Laws of 1869, or the act amendatory thereof. Chapter 296 of Laws of 1874 was put in evidence.
It is admitted that the Mew York & Oswego Midland Railroad was exempted from taxation prior to the passage of chapter 296 of Laws of 1874, and that after that act was passed it was assessed.
At the annual meeting of the board of supervisors of Sullivan county in Movember, 1888, the several towns above named presented a statement of facts to said board, and demanded in behalf of such towns that the board ascertain the amount of state tax so called collected from the railroad in the several towns respectively, and used by the county in payment of state tax, and that the board levy said amount upon the taxable property of the county, with interest from the time of using the same by the county, and collect the amount thereof and pay the same into the county treasury, to the credit of the respective towns in proportion to the amount collected from the railroad in said towns *840 to the use and benefit of the same, which the board refused to do. The plaintiffs in these actions respectively demand the state tax collected in their respective towns on the railroad, from 1874 to 1887 inclusive, and taken and used by the county of Sullivan in the payment of its proportion of the state tax, the same as money collected from other taxable property of said county, be accounted for by said county and paid to the county treasurer for the use of such towns, for the purpose of purchasing or canceling its outstanding bonds of the town, issued in aid. of the construction of the railroad, or for investment as a sinking fund for that purpose.
By chap. 898 of the Laws of 1866, the towns in several counties along the line of the Mew York & Oswego Midland railroad, including the towns of Sullivan county, were authorized, upon condition therein specified, to subscribe to the capital stock of that railroad and to issue their bonds in payment for, or to meet the obligation incurred under such subscription.
Section 16 of that act exempted the railroad corporation from taxation for state, county, town or municipal purposes, until a single-track of such road was completed and in operation for a period not. exceeding ten (10) years, provided said railroad did not consolidate with any other railroad not wholly or partially constructed.
Section 4 of chap. 907 of the Laws of 1869 provides that “ All taxes except school and road taxes collected for the next thirty (30) years, or so much thereof as may be necessary, in any town, village or city, on the assessed valuation of any railroad in said town, village or city, for which said town, village or city has issued bonds to aid in the construction of said railroad, shall be paid over to the treasurer of the county in which said town, village or city lies, and said money so paid over, including interest collected on bonds held by said treasurer as a sinking fund, shall be invested by said treasurer in state, city, town, county or village-bonds issued pursuant to law of this state on United States bonds, within sixty days after receiving thesame, and shall be held by said county treasurer as a sinking fund for the redemption and payment, of the bonds issued or to be issued by said town, village or city to aid in the construction of said railroad.”
This act was amended by chap. 283 of the Laws of 1871, and as so amended was held to apply to all towns which have been bonded in aid of railroads, and is therefore applicable to the towns-in question in these actions, and is not limited to railroads constructed under the act of 1869. Matter of Clark v. Sheldon, 106 N. Y., 104; 8 St. Rep., 537. The law which exempted the real and personal property of this railroad was repealed by chap. 296-of the Laws of 1874.
This repealing act was entitled: “ An act to subject the real and personal property of the Mew York & Oswego Midland Railroad Company to taxation, and to appropriate the amount of the-county tax thereon to certain towns, to be applied towards the-payment of the interest or principal on certain town bonds.”
The first section of this act repeals all laws so far as they ex *841 empt real or personal property of the ¡New York & Oswego Midland Railroad Company from taxation.
The second section in express terms provides that all moneys collected upon real and personal property of said corporation for county taxes in any of the towns or municipalities by which bonds have been issued in aid of the construction of the ¡New York & Oswego Midland Railroad are appropriated to such towns or municipalities, respectively, and ■ directed the same to be paid over to the railroad commissioners of such town or municipality appointed under the authority of the act to facilitate the construction of said road, passed April 5, 1866.
It is insisted by the plaintiff that the act of 1874 above referred to repealed chap. 398 of the Laws of 1866 in so far as that act exempted this railroad from taxation, and modified chap. 907 of the Laws of 1869, by directing that the county tax on this railroad should be paid to the commissioners for the use of the town in liquidation or extinguishment of the bonds, leaving the state tax when collected to be paid over to the county treasurer, as provided by § 4 of chap. 907 of Laws of 1869, and that that act with the modifications suggested is still in force.
On the part of the defendant, it is insisted that chap. 907 of the Laws of 1869 is repealed by implication by chap. 296 of the Laws of 1874; that their provisions aré so inconsistent with each other that they cannot stand together.
In determining this question, it is necessary to examine the provisions of both, and thus determine to what extent the latter is repugnant to the former, and to that extent only will the former be deemed repealed, and in making that investigation we must keep in view the elementary rule of construction, that repeals by implication are not favored in law; and at the same time give effect to that other equally well recognized rule of construction, that when a later statute, not purporting to amend a former one upon the same subject, not repugnant to the former one, in all of its provisions covers the whole subject, and was plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by necessary implication, although the later statute contains no repealing clause. Daniel R. Lyddy v. Long Island City, 104 N. Y., 218; 5 St. Rep., 665.
By the act of 1869 all taxes, except school and road taxes, shall be paid over to the county treasurer, and the money so paid over shall be invested by him in a manner provided in the act to meet the liability on the bonds of the town at maturity.
This act was clearly broad enough to cover taxes levied as state and county taxes, and by its terms, but for the provisions of § 16 of the Laws of 1866, exempting such road from taxation, the town would be entitled to credit for all state and county tax collected from such railroad. When the limit fixed in that section expired, or when chap. 269 of the Laws of 1874 took effect and the immunity of the railroad from taxation was taken away by § 1 of that act, the right of the town to the tax became again fixed under the provisions of § 4 of the act of 1869.
*842 Now, if we could stop with that section, no question, it would seem, could arise as to the right of the town to the benefit of the state and county tax.
Does section second (2), which relates only to county tax, affect, the right of the town to the state tax under the act of 1869 ? I think not Section 1 of the act of 1874 deals exclusively with questions of the railroad exemption from tax, and in that respect, relates to the county tax, which is affected by that section, but also to the state tax, which is not referred to or affected in terms by that section, and unless we import into that section something which is not found in it, and which is not necessary to give it effect, it can have no application to the state tax.
The act of 1874 cannot, therefore, I think, be construed to-repeal any part of the act of 1869, now under consideration. That act is general and applies to all bonded towns in the state.
The act of 1874 is confined strictly to the Midland towns intersected by that railroad, and all the provisions of the act of 1869 must remain in force as to all railroads of the state which issued bonds under it to other railroads.
All that was effected by the act of 1874 was the repeal of the exemption of the Midland Eailroad from taxation and a.modification of existing laws, so as to allow the county tax to be appropriated at once by the railroad commissioners to the payment of the interest on the town bonds, leaving in full force the provisions of the act of 1869 so far as it embraced or related to state tax, and leaving that tax to be invested under that act as a sinking fund for the ultimate redemption of such bonds.
This construction does not seem repugnant to the letter or spirit of the act of 1874, but is in harmony with the general scope of the legislation upon the subject, which seems to be to-give the towns the benefit of the tax which was levied upon railroad property within their limits when such property was created! or brought into existence by the aid of the indebtedness of such towns. Bridges, supervisor, v. The Board of Supervisors, 92 N. Y., 571. These two statutes may be read together, and effect given to-both, without any impairment of the provisions of either. That, being so, they must be permitted to stand together and their provisions enforced.
In People v. Catholic Protectory, 101 N. Y., 200, the court in discussing this general subject, as applied to that case, says:: “ The enactments can be read together, and easily stand together without the least clash or conflict, and when that can be done-our duty is to. reconcile them and give to each its operative-force.”
Two statutes shall stand together, and both have effect, if possible, for the law does not favor repeals by implication, and all acts in pari materia should be taken together as if they were-one law.
Laws in pari materia must be construed as if they formed part of the same statute, although enacted at different times; such laws-are to be construed together as forming a united system and as-one statute.
John F. Anderson (Lewis e. Carr, of counsel), for app’lt; T. F. Bush, for resp’t.
I am, therefore, of the opinion that the act of 1869 is in force as to the state tax, and that the plaintiff in each case is entitled to recover in these actions the state tax paid to and used by the county, with interest. All the other questions raised by the defendant have been settled by recent decisions adverse to the claims of the defendant and in favor of the plaintiff’s right to recover. Clark v. Sheldon, 106 N. Y., 104; 8 St. Rep., 537 ; Hand v. Supervisors of Columbia Co., 31 Hun, 531; Strough v. Supervisors of Jefferson Co., 50 Hun, 54; 23 St. Rep., 940, affirmed by court of appeals, see MSS. opinion of Andrews, J., covering several questions; Bridges v. Supervisors of Sullivan Co., 92 N. Y., 571. This last case seems to hold that as that action was brought to recover the county tax, under the provisions of § 2 of chapter 294 of the Laws of 1874, the state tax assessed and collected of the railroad could not be recovered in that action. But it does not follow from that, that the state tax which is clearly embraced in the words “ all taxes ” in § 4 of chap. 907 of Laws of 1869, cannot be recovered in an action for that purpose when by the statute the tax is expressly given to the town, or for its use.
As was said in Bridges v. Supervisors, “ The county thus has acquired the money of the town and has no right to withhold it.”
Nor do I think this is a case where the plaintiffs are concluded by the submission of their claim to the board of supervisors and its rejection by the board. The board did not pass upon and allow a part, and reject a part, in such a manner as to bind the defendant as a judicial determination. It is not such a case as within the authorities the plaintiff would be concluded by the acts of the defendant in rejecting their claims.
The plaintiffs are entitled to judgment.
Learned, P. J.
The learned justice before whom this cause was tried wrote a very full and careful opinion. We adopt his opinion and shall only examine a few points specially urged on this appeal.
First. It is urged that a recovery for the taxes of 1881 is barred by the statute of limitations. This action was commenced December 24, 1888. The cause of action arose when these taxes were misappropriated. Strough v. Supervisors, 119 N. Y., 212 ; 28 St. Rep., 967. They were so misappropriated when taxes which should have been otherwise used were used for the benefit of the county. Id.
The court found that the money collected for the year 1881, now in question, was so used by the county treasurer on or before February 1, 1883. The amount for that year was $100.50. The appellant urges that inasmuch as the state tax had been paid by the county before November 10, 1882, the misappropriation must have been made before that time. But the money now in question was not kept separate. It went into the county treasurer’s hands mingled with other money. *844 And on the 10th of ¡November, 1882, he had money on hand not expended, amounting to $248.68, which amount was more than the moneys in question. He could, therefore, at that time have paid the money in question where it should have been paid. If he had once paid the state by this amount, still it cannot be said that there was a misappropriation so long as the county treasurer had remaining in his hands moneys raised in the year out of which he might have paid the present claim. There had. been a deficit from the previous year. So that the money in his-hands did not come from that year.
Again, the appellant claims that the taxes of 1887 could not be-included in the recovery because the finding of the court is that, they were misappropriated on or before February 1, 1889, which, was after the commencement of the action. There is a special finding that these taxes were not paid or used for the benefit o£ the county until after January 1, 1889.
The complaint demands a judgment for the amount of these-taxes, and that they be levied and collected from the taxable-property and paid to the treasurer to cancel bonds of the town, and for investment as a sinking fund. The judgment is to the-same effect This is then not simply an action for the recovery of money. It is to compel the levy of the amount; the payment thereof on bonds and the investment of the same pursuant to. statute. It is then an action in equity, according to the distinction in the Code, §§ 968, 969, and according to the old law.
But it has always been the rule in equity cases that such relief may be granted as the facts existing at the close of the litigation may demand. That rule applies here.
The next point of the appellant is that in chapter 283, Laws of 1871, where the language is: “ All taxes, except school and road taxes, collected, etc.,” the words “school taxes ” refer to the tax imposed by the state for the maintenance of common schools. . Hence, the appellant insists that the recovery should be reduced! by $478.66, that being the aggregate of the state tax for those-levied to maintain common schools.
We think it is plain that the words “ school and road taxes ” referió local taxes for school purposes and for road purposes. The tax imposed by the state is called the state tax, not a canal tax, or a school tax, or a general fund tax. As remarked in Clark v. Sheldon, 106 N. Y., 110; 8 St. Rep., 537, “ it must always be easy for-the collector to make the proper deduction of school and road taxes.” It would certainly be impossible for him from any papers in his hands to deduct that proportion of the state tax which is-raised for the maintenance of common schools. The meaning, therefore, of the words “ school and road taxes ” is plainly intimated in that opinion. It is unnecessary to say more on this.
Another point is that the supervisor of this town in 1888 submitted this matter to the board of supervisors at its annual meeting, and it passed upon the same and decided not to levy the-tax. Hence, the appellant says that plaintiff’s remedy was by certiorari or mandamus. That such an action as the present will lie is settled by the Strough case, ut supra, and by the Bridges case, *845 92 N. Y., 570, and the Newman case, 45 id., 676. The question,, then, is whether the application to the supervisors and their refusal is a bar. We think not There was no adjustment of' amount needed. The amount was settled. Possibly a mandamus might have issued to compel the board to act But the plaintiff was not limited to that remedy.
These are the points which are specially brought to our notice. On the general question involved in the case we follow the opinion of Justice May ham at special term without repeating what he has said.
Judgment affirmed, with costs.
Landon, J., concurs.