THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent, *v.* PAUL S. MAINE, as Supervisor of the Town of Fenner, and THE BOARD OF SUPERVISORS OF MADISON COUNTY, Appellants.

*Action by a taxpayer to restrain a submission of a claim against a county — when maintainable — statement of the legal effect of a transaction — waiver of a defense by the board of supervisors.*

An action brought by a taxpayer of a county to restrain the submission to the General Term of the Supreme Court, upon an agreed statement of facts, of a claim of a town within such county against the board of supervisors thereof, is not maintainable in a case in which the defendants have acted in good faith and

in the belief that the submission contained a full, fair and truthful statement of all the facts upon which the controversy depended, and there was no intent or purpose to defraud any taxpayer of the county, unless the acts complained of were beyond the authority of the board and wholly illegal and void.

Such a submission states the legal effect of the transaction, when it states that the amount of certain taxes was duly collected from a railroad company by the collectors of a town and was duly paid over by said collectors to the county treasurer, when the fact was that the railroad company paid such taxes directly to the county treasurer.

A board of supervisors of a county has power to waive the defense that an alleged erroneous payment of taxes to the county by a town therein was voluntary, provided there is no fraud or collusion and the county has had the benefit of the amount of such tax.

APPEAL by the defendants, Paul S. Maine, as supervisor of the town of Fenner, and the board of supervisors of Madison county, from a judgment of the Supreme Court, rendered at the Madison Special Term in favor of the plaintiff, entered in the office of the clerk of the county of Madison on the 16th day of May, 1892, and by the defendant Maine, as such supervisor, from an order of the Supreme Court, made on the 26th day of April, 1892, denying the defendant's motion for additional findings.

The judgment restrained the defendants from further proceeding in the matter of the submission to the General Term of a certain controversy between the defendants, and from presenting any amended or other submission which does not contain a statement of certain facts found in the decision.

The action is brought by the plaintiff as a taxpayer of the county of Madison, to restrain the submission to the General Term of a claim of the town of Fenner against the county upon an agreed statement of facts. It is alleged that the statement of facts is false and collusive in divers particulars, and that the alleged grounds of resistance do not fully or truthfully raise the defense as it in fact exists, and that the submission was drawn and was proposed to be submitted by collusion and in fraud of the taxpayers of the county. The submission bears date January 24, 1891, and was filed January 27, 1891.

On the 1st day of February, 1869, pursuant to the provisions of chapter 140 of the Laws of 1868, entitled " An act to authorize the village of Canastota and the towns of Cazenovia and Fenner, in the county of Madison, to issue bonds and take stock in the Canastota

Railroad Company," the commissioners of the town of Fenner, duly appointed for that purpose, borrowed upon the credit of the town the sum of $20,000 and issued bonds therefor, and with the money so borrowed took and paid for stock to the same amount in the said railroad company. In the year 1882 the assessed valuation of the said railroad company for that year in the town of Fenner was $24,350, and the State tax assessed against and collected from the company was $243.50, which was divided as follows: For State purposes, $51.16; for county purposes, $61.52; for town, $130.82. In the following years, up to and including 1889, similar assessments were made against the railroad company in said town, and a tax each year collected. The submission states in detail the amount of the tax each year and what part of it was for State purposes and what for county purposes. It then states that such sums, specifying the items each year for State and county taxes, " were duly collected from said railroad company by the collectors of said town, on or before the first day of February of said years respectively, and were duly paid over by said collectors to the county treasurer of Madison county, and were paid out by him for general county purposes, including State taxes, on the 1st day of June of said years respectively.

"No part of said sums has ever been refunded to said town of Fenner, or been applied by the county treasurer to the creation of a sinking fund for the payment of the bonded indebtedness of said town.

" In each of said years, from 1882 to 1888 inclusive, there was raised, by taxation upon the taxable property of the town, a sum equal to the railroad's share of the entire tax, in excess of the amount required to be raised by said town for the ordinary expenses of said town. These sums were set apart by the county treasurer of Madison county as a sinking fund for the payment of said bonded indebtedness of the town, and were afterwards duly applied to that purpose.

" In fixing and determining the equalized value of the property of said town of Fenner for said years 1882, 1883, 1884, 1885, 1886, 1887, 1888 and 1889, for the purpose of ascertaining the amount of property in said town liable to taxation for State and county purposes, and for the purpose of apportioning the tax to be paid by said town, no reduction was made on account of the property of said

railroad company, or any part thereof, and the same was treated as any other taxable property of the town, and as liable to taxation for State and county purposes."

The submission then states the proceedings of the board of supervisors with reference to the Statute of Limitations, and the position of the town in regard thereto. These need not be detailed here. The town claimed to recover of the county certain specific sums which were the same in amount each year as the amount of the State and county taxes in the tax paid by the railroad company, and in each case interest was asked from the first day of June following the payment. The questions submitted were : *First*, whether the plaintiff therein, as supervisor of the town of Fenner, was entitled to recover of the defendants therein, those sums, specifying them for each year ; *second*, whether the board of supervisors of Madison county or the county of Madison was liable for the payment of those sums or any part thereof ; *third*, whether the Statute of Limitations barred the items claimed for the years 1882 and 1883 ; and, *fourth*, whether the act under which the claim was made was constitutional.

At the Special Term it was, among other things, found as follows :

" 4th. Such case and submission were executed and entered into by and between the defendants in this action in good faith, and in the belief that the same contained a full, fair and truthful statement of all the facts upon which the controversy between them depended. There was no intent or purpose on their part to injure or defraud the plaintiff in this action, or any citizen or taxpayer in said county."

" 6th. In each of the years from 1882 to 1888 inclusive (except the year 1884), the supervisors of said county apportioned against the town of Fenner its share of the State and county tax, without taking out the assessed valuation of the said railroad property therein. The supervisor of the town thereupon added to the share so fixed, the amount to be raised for the town expenses, and divided the sum so ascertained, by the assessed valuation of the property of the town, less the assessed valuation of such railroad property, and in that manner acquired the rate per cent to be levied against all the taxable property of the town.

" He then multiplied the total assessed valuation of the property of the town by such rate per cent, and the sum so ascertained he

caused to be levied and collected against the taxable property of the town, including the railroad property.

"Such method caused to be collected in each year, not only the amount of taxes needed for State, county and town expenses, but also a sum in addition thereto, just equal to the amount of the tax levied upon and collected from the railroad company.

"7th. In each year from 1882 to 1889, inclusive, the tax levied against the property of said railroad company was paid by such company directly to the treasurer of Madison county, and was received by such treasurer before he received from the collector any portion of the taxes collected by him.

"Upon receiving such taxes from the railroad company, the treasurer in each year made the credit and entry in the 'Railroad Sinking Fund Account,' as stated in the next finding."

The county treasurer in 1871 opened with the town a sinking fund account, which has been continued to the present time, and in each year the treasurer "has credited the town of Fenner therein with a sum equal to, and identical in amount, with the tax levied against and paid to him by the said railroad company in the town of Fenner, and stated in such account that it was the railroad tax from such railroad. Such credit was made as soon as the amount was received in each year from the company, but never before it was received. The money itself was not kept in separate deposit, but was deposited in bank in his general account as county treasurer. Such amount so credited was also (except in the year 1884) exactly equal to the sum raised in each year by the town of Fenner, in excess to the amount needed for the State, county and town taxes of such year."

The sums so credited the town were used by the treasurer solely for the purchase or the redemption and cancellation of the bonds issued by the town in aid of the railroad, and in each year a committee of the board of supervisors examined and reported upon and approved the sinking fund account so kept.

"12th. In the year 1884 the supervisor of the town of Fenner ascertained his rate per cent, without deducting the value of the railroad property from the assessed valuation of the town, and for that reason no greater sum was raised that year than was needed for State, county and town expenses; nevertheless, the treasurer of the

county placed to the credit of said town, in such sinking fund account, the precise amount of taxes that were paid to him that year by said railroad company, as the tax levied against its property, and applied the same to the purposes of such sinking fund, thereby creating a deficiency in the taxes needed for that year; such deficiency was supplied by borrowing, and the following year a tax was levied against the town of Fenner to repay the same."

As matter of law it was decided that "all the facts contained in the foregoing fifth to the fifteenth findings of fact, both inclusive, should be presented to the court, and the submission in that respect is insufficient and defective," and did not fully and fairly leave to the decision of the court all of the facts which fix and determine the rights of the respective parties.

The material portions of the fifth to the fifteenth findings of fact are above stated.

*Henry B. Coman*, for the appellant Maine.

*John E. Smith* and *Charles A. Hitchcock*, for the appellant board of supervisors.

*C. D. Prescott*, for the respondent.

MERWIN, J.:

In *Talcott v. City of Buffalo* (125 N. Y. 280), it was held that the provision of the Code of Civil Procedure (§ 1925), authorizing an action by a taxpayer to prevent waste of or injury to the property of a municipality as supplemented by the acts of 1881 and 1887, is confined to cases where the acts complained of are without power, or when corruption, fraud or bad faith amounting to fraud is charged. This was approved in *Ziegler v. Chapin* (126 N. Y. 342), and it is said by FINCH, J. (p. 348): "If the officer is honest and faithful no suit against him is needed. The taxpayer may explain to him the facts, and discover to him the fraud, and the courts are open for his protection, and the means of redress are at hand. It is only when, in the face of explanation and knowledge, he still refuses to act, and persists in carrying out the wasteful contract, that an action against him is needed; and then it rests upon

his misconduct, upon his collusion and fraud, which must be alleged and proved."

Under these cases and the finding at Special Term that the defendants acted in good faith, and in the belief that the submission contained a full, fair and truthful statement of all the facts upon which the controversy between them depended, and that there was no intent or purpose on their part to injure or defraud any taxpayer of the county, the present action is not maintainable, unless the acts complained of were beyond the authority of the board, and wholly illegal and void. (*Ziegler Case*, 126 N. Y. 349.)

It is not claimed that the board had no power to make a submission of the controversy, but that the facts were not so stated as to present all the questions in the case.

The submission stated that the taxes against the railroad company were duly collected from the company by the collectors and paid over by the collectors to the county treasurer; that they were paid out by him for general county purposes, including State taxes, and no part has been applied by the county treasurer to the creation of a sinking fund for the payment of the town bonds; that in each of the years in question there was raised by taxation upon the taxable property of the town a sum equal to the railroad's share of the entire tax in excess of the amount required to be raised by the town for ordinary expenses, and those sums were set apart by the county treasurer for a sinking fund for the payment of the bonded debt, and were so applied.

The facts as found by the Special Term are that the railroad company paid its taxes directly to the county treasurer before the treasurer received from the collector any portion of the taxes collected by him; that upon receiving such taxes from the railroad company the county treasurer credited the town in the sinking fund account with a sum equal to and identical in amount with the tax levied against the company, and stated in such account that it was the railroad tax from such railroad, and that the amount so credited was used and applied in the sinking fund account; that there was raised by the town each year (except one, and then the deficiency was afterwards collected) an excess equal to the railroad's share of the entire tax as stated in the submission, and the amount credited to the sinking fund each year was exactly equal to this excess; that the

moneys credited by the treasurer to the sinking fund account were not kept in separate deposit, but were deposited in bank in his general account as county treasurer.

The act under which the sinking fund was created (§ 4, chap. 907 of the Laws of 1869, as amended by chap. 283 of the Laws of 1871) does not provide for the payment directly from the railroad company to the county treasurer. It provides that the taxes "collected" upon the assessed valuation of any railroad, etc., shall be paid over to the county treasurer. This recognizes the idea that the moneys are supposed to go through the hands of the collector. The submission, therefore, when it stated that the moneys were collected by the collector and paid over by him to the treasurer, stated the legal effect of the transaction. So it is to be observed that if the moneys paid in by the railroad company were set apart to the sinking fund, there was no separation of funds by the county treasurer. So that, when the excess raised by the town came in, the county had the benefit of the full amount of the tax levied against the town, and the town had no benefit from the application of the railroad taxes. It in effect made up to the county the deficiency occasioned by the application of the railroad taxes as the law required. In regard to such a case, it is said in *Bridges* v. *Board of Supervisors,* etc. (92 N. Y. 580) : " The county is neither entitled to these moneys nor to an equivalent amount from the town of Liberty. It is entitled to receive from the taxpayers of that town only that proportion of such amount which its assessed valuation bears to the aggregate valuation of the taxable property of the whole county, and this amount is collectible only through the general tax levy." It would, therefore, seem if the county received and used the excess, so called, it received and used an amount it was not entitled to have from the town, and this amount was exactly equal to the tax against the railroad company.

It is quite manifest that whether we take the facts as stated in the submission, or as found at the Special Term, the county received from the town the same amount that it was not entitled to have, or would not have had, if the law had been carried out. The whole was raised under one warrant, and the one important fact was whether the county had too much.

The counsel for the plaintiffs, however, claims that the facts, as

found by the court upon the trial, raise a new and material question which should appear by the case upon submission, and that is, when a town has had the benefit of the railroad taxes, as provided by the statute, and by its own independent act has provided for and paid any deficit arising thereby, can it recover such amount from the county?

In other words, the town has voluntarily raised and paid to the county more than it was bound to pay, and, therefore, it is argued, it cannot recover it back, although the county has had the full benefit of it.

The first mistake was made by the board of supervisors when, in making the apportionment of State and county taxes among the several towns, it failed to deduct the assessed valuation of the railroad property. (*Bridges* v. *Board, etc., supra.*) This mistake, it might be argued, induced the action of the town, and, if so, there would at least be a strong equity in favor of the town.

In *Woods* v. *Supervisors, etc.* (136 N. Y. 403, 411), which was a submission like the present, it is said that it cannot be doubted that the board of supervisors could have most effectually waived the defense of the Statute of Limitations by honestly and without collusion refusing to plead it. If so, can it here be doubted that the board had power to waive the defense, if it existed, that the payment by the town was voluntary, it being found that there was no fraud or collusion, and the county having had the benefit of the moneys?

In substance, taking the facts as claimed by the plaintiff, there was no controversy between the town and county on the subject of the voluntary payment, but on other questions which then seemed of more importance than they do now by reason of subsequent decisions of the courts. We are, in effect, asked to compel the county, if it makes any submission at all, to make it in a way that will raise a defense and litigate a question that it does not care to raise and litigate. It seems to me that we cannot fairly say that the board acted beyond its power, or that its action was illegal or fraudulent.

The court to which the submission was to be made was only to be called on to pass on the questions raised by the facts as agreed on.

It was immaterial to it whether the county raised all the defenses possible.

The remarks of Judge ANDREWS, in *Osterhoudt* v. *Rigney* (98 N. Y. 232), are in principle quite pertinent : " Whether the claim is a proper town or county charge, in a case where it is doubtful and rests upon disputed evidence, and what amount shall be allowed, when not fixed by statute, are questions which the statute commits to the determination of the board of audit, and however much it may err in judgment upon the facts, so long as it keeps within its jurisdiction and acts in good faith, its audit cannot be overhauled, but is final as well as to the taxpayers as to the claimant. (*Supervisors* v. *Briggs*, 2 Den. 26 ; *People ex rel. Johnson* v. *Supervisors, etc.*, 45 N. Y. 196, 200.) It would be intolerable to permit a taxpayer, upon a mere allegation of error in the course of the proceedings of boards of audit in matters within their jurisdiction, to compel the Supreme Court in a collateral action to re-examine claims allowed upon their merits, and to approve or reverse the proceedings upon its own view of the justice or equity of the claim. The adjudication of a board of audit, proceeding regularly within its jurisdiction, establishing a claim against a town, although the allowance may be excessive, or although it may err in its conclusion upon the facts, does not constitute waste or injury to the property of the town, within the act of 1872."

The foregoing considerations lead to a reversal.

HARDIN, P. J., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.