THE COUNTY OF ALBANY, Appellant, *v.* S. PERCY HOOKER et al., Composing the State Commission of Highways of the State of New York et al., Respondents.

Constitutional law — a county cannot maintain an action to have a statute appropriating moneys for the construction of "State highways" declared unconstitutional.

1. The state has exercised its sovereign power by dividing its territory into counties and imposing upon them certain governmental and political powers and duties. In the exercise of such powers and in the performance of such duties the counties are mere agents of the state and component parts of it. They are not, in the exercise of such authority, subject to suit any more than the state itself, and cannot maintain an action against the state of whose sovereign power they are a part, or against state officers who are expressly charged with the performance of sovereign power.

2. In the exercise of certain corporate powers counties have been treated as quasi corporations and have sued and been sued as such; but authority to sue and be sued as quasi corporations has been restricted to matters pertaining to them in their corporate capacity as distinguished from their governmental and political capacity.

3. Counties are trustees only of the property held for public use. They are not the guardians and protectors of private, and individual interests or property of the citizen. They may not intervene by action to protect or redress the individual citizen in respect to wrongs or injury to his person or property. Their power as well as duty is restricted to the protection and preservation of property possessed by them in their corporate capacity.

1

4. When there is no fund or property in existence the title to which is in a county, and no funds or property in the possession of another to which it is entitled to possession, and the entire subject is one of governmental and public policy, independent of its corporate rights, an action cannot be maintained by a county.

5. The Taxpayers' Act (Code Civ. Pro. § 1925, and General Municipal Law, Cons. Laws, ch. 24, § 51) authorizes actions only against municipal corporations and their officers, not against state officers. Hence an action to restrain the expenditure of state moneys on highways, as alleged in the complaint herein, can be brought by the People of the state alone.

6. The legislature of 1911, under authority of section 12 of article 7 of the Constitution, as amended in 1905, which authorizes the expenditure of fifty millions of dollars for the improvement of highways, appropriated certain sums, the proceeds of bonds issued for that purpose, for the construction and improvement of certain highways therein described. This action by the county of Albany is brought to have said acts declared unconstitutional and void and of no effect, and to restrain and enjoin the state officers having to do therewith, among other things, from awarding and executing any contract and from advertising for any further bids for highways to be constructed from funds made available by said acts. *Held*, that the county has not the legal capacity to bring the action.

*County of Albany* v. *Hooker*, 145 App. Div. 945, affirmed.

(Argued December 4, 1911; decided January 9, 1912.) ·

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 28, 1911, which denied an application for an injunction to restrain the defendants from letting certain contracts for highway construction.

The nature of the action, the facts, so far as material, and the question certified are stated in the opinion.

*Thomas F. Conway* for counties intervening. The question certified to this court, namely, "Has the county of Albany legal capacity to bring this action?" should be answered in the negative. (*Woods* v. *Bd. of Suprs.*, 136 N. Y. 403; *Markey* v. *County of Queens*, 154 N. Y. 675; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Town of*

*Guilford* v. *Bd. of Suprs.*, 13 N. Y. 143; *Doolittle* v. *Supervisors of Broome County*, 18 N. Y. 155; *Mayor, Recorder, etc., of Georgetown* v. *Alexandria Canal Co.*, 12 Pet. 91; *Roosevelt* v. *Draper*, 23 N. Y. 318; *N. P. R. R. Co.* v. *Whalen*, 149 U. S. 157; *Osterhout* v. *Rigney*, 98 N. Y. 222; *People* v. *Canal Board*, 55 N. Y. 390; *People ex rel. Carter* v. *Rice*, 135 N. Y. 473; *Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185.)

*Harold J. Hinman* and *Ellis J. Staley* for appellant. It is not necessary to point to a particular statute giving a county the right to sue or be sued with reference to any particular controversy or cause of action, as the statutes do not, and never have defined the rights of action in relation to which a county may sue or be sued, but only the manner of suit; and whenever a county has an interest in a controversy or cause of action as a body corporate it may avail itself, as a municipal corporation, of all the rights and remedies afforded to an individual. (*Russell* v. *Men of Devon*, 2 T. R. 667; *Jackson* v. *Hartwell*, 8 Johns. 422; *Van Heusen* v. *Johnson*, 3 Den. 183; *Town of Guilford* v. *Cooley*, 58 N. Y. 116; *Miller* v. *Bush*, 87 Hun, 507; *Town of Hempstead* v. *Lawrence*, 138 App. Div. 473; *Woods* v. *Bd. of Suprs.*, 136 N. Y. 403; *Ward* v. *Petrie*, 157 N. Y. 303.) The following principles may be gleaned from the cases: 1. Corporate rights and liabilities may and do grow out of the exercise of public functions and powers by a municipal corporation, such as a county. 2. A county or a town, as a municipal corporation, has a right and interest in or to property in its corporate capacity, which it can protect whenever a misapplication of or injury to such property would result in a special loss to it, and this although the property is acquired, held or used as an incident to the exercise of a public function. (*Russell* v. *Men of Devon*, 2 T. R. 667; *McKinnon* v. *Penson*, 8 Exch. 310; *Gibson* v. *Mayor of Preston*, L. R. [5 Q. B.]

218; *Jackson* v. *Cary,* 8 Johns. 385; *People* v. *Ingersoll,* 58 N. Y. 1; *Bailey* v. *New York,* 3 Hill, 531; *Wilson* v. *New York,* 1 Den. 595; *Lloyd* v. *New York,* 5 N. Y. 369; *Rochester White Lead Co.* v. *Rochester,* 3 N. Y. 463; *Bridges* v. *Supervisors,* 92 N. Y. 570; *Maxmilian* v. *New York,* 62 N. Y. 160; *Radcliff* v. *New York,* 4 N. Y. 195; *Clemence* v. *Auburn,* 66 N. Y. 334.) Whenever a debt is authorized by statute for the improvement of highways under the Constitution, in any amount, the highways to be improved with the avails of that debt must be determined and equitably apportioned among the counties by general laws. (Const. of N. Y. art. 7, § 12; *People ex rel. Lee* v. *Bd. of Suprs.,* 43 N. Y. 11; *People* v. *O'Brien,* 38 N. Y. 193; *People ex rel. Adsit* v. *Allen,* 42 N. Y. 378.) The right to maintain this action is granted by section 12 of article 7 of the State Constitution. (*People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360; *Hadden* v. *Spader,* 20 Johns. 554; *Ennis* v. *Lansing,* 7 Paige, 583; *T., etc., Ry. Co.* v. *Penn. Co.,* 54 Fed. Rep. 746; *Gilchrist* v. *H. H. S. & S. Co.,* 58 Fed. Rep. 708; *Maury Co.* v. *Lewis Co.,* Swan [Tenn.], 236.)

*Thomas Carmody, Attorney-General (Henry Selden Bacon, Irving D. Vann* and *Valentine Taylor* of counsel), for respondents. Counties in this state have no such powers at common law as to permit the bringing of this action. (1 Black. Comm. [Cooley's ed.] 113–116, 349–354; 1 Pollock & Maitland Hist. of English Law, 513–515; Maitland Domesday Book & Beyond, 347–349; *Russell* v. *Men of Devon,* 2 T. R. 667; *Hart* v. *Bridgeport,* 13 Blatchf. 289; *People* v. *Ingersoll,* 58 N. Y. 1; *Fort Plain Bridge Co.* v. *Smith,* 30 N. Y. 44; *Adler* v. *Met. E. R. R. Co.,* 138 N. Y. 173; *Davis* v. *New York,* 14 N. Y. 506; *Doolittle* v. *Broome Co.,* 18 N. Y. 155; *Roosevelt* v. *Draper,* 23 N. Y. 318; *People* v. *Fleet,* 58 N. Y. 491; *Ayers* v. *Lawrence,* 59 N. Y. 192; *Osterhout* v. *Rigney,* 98 N. Y. 222.) No statutory authority has been

expressly or impliedly conferred upon counties to maintain an action of this character. (*Markey* v. *County of Queens,* 154 N. Y. 675; *Lefrois* v. *County of Monroe,* 162 N. Y. 563; *Seward* v. *Beach,* 29 Barb. 239; *Brooklyn City & N. R. Co.* v. *Coney Island & B. R. Co.,* 35 Barb. 364; *Fearing* v. *Irwin,* 55 N. Y. 486; *Hoey* v. *Gilroy,* 129 N. Y. 132; *People ex rel. Van Norder* v. *Commission,* 90 App. Div. 555.) The proper plaintiffs in such an action are the people of the state. The only proper official to commence such an action on behalf of the people is the Attorney-General. (*People* v. *S. C. L. Co.,* 126 App. Div. 616; *Attorney-General* v. *Brown,* 1 Swanst. 265; *Attorney-General* v. *Mayor, etc., of Dublin,* 1 Bligh [N. P.], 312; *Attorney-General* v. *Mayor of Liverpool,* 1 Myl. & Cr. 171; *Attorney-General* v. *Aspinall,* 1 Keen, 513; *Attorney-General* v. *Aspinall,* 2 Myl. & Cr. 613; *Attorney-General* v. *Wilson,* 1 Cr. & P. 1; *Attorney-General* v. *Corp. of Poole,* 4 Myl. & Cr. 17; *Attorney-General* v. *Eastlake,* 11 Hare, 206; *Attorney-General* v. *Mayor of Belfast,* 4 Irish Ch. 119; *Attorney-General* v. *Barrett,* 3 Irish Eq. 392; *Attorney-General* v. *Compton,* 1 Y. & Col. 417; *Parr* v. *Attorney-General,* 8 Cl. & Fin. 409.)

CHASE, J. Section 12 of article 7 of the Constitution of this state was added by an amendment approved by the people in 1905 and took effect from and after January 1st, 1906, and is as follows: " A debt or debts of the State may be authorized by law for the improvement of highways. Such highways shall be determined under general laws, which shall also provide for the equitable apportionment thereof among the counties. The aggregate of the debts authorized by this section shall not at any one time exceed the sum of fifty millions of dollars. The payment of the annual interest on such debt and the creation of a sinking fund of at least two per centum per annum to discharge the principal at maturity shall be

provided by general laws whose force and effect shall not be diminished during the existence of any debt created thereunder. The Legislature may by general laws require the county or town or both to pay to the sinking fund the proportionate part of the cost of any such highway within the boundaries of such county or town and the proportionate part of the interest thereon, but no county shall at any time for any highway be required to pay more than thirty-five hundredths of the cost of such highway, and no town more than fifteen hundredths. None of the provisions of the fourth section of this article shall apply to debts for the improvement of highways hereby authorized."

By chapter 469 of the Laws of 1906 and the amendment thereof by chapter 718 of the Laws of 1907 it was provided that bonds should be issued pursuant to the provisions of said section of the Constitution and that the proceeds thereof be expended for the improvement of highways in a manner provided by chapter 115 of the Laws of 1898 and the acts amendatory thereof. By the act of 1898 provision was made for the improvement of highways, one-half of the expense thereof to be paid by the state, thirty-five per cent by the county, and fifteen per cent by the town in which the highway improved is situated, except that in specified instances the owners of the land benefited by such improvement should pay fifteen per cent of the cost thereof instead of the town. Maps of the highways of the state, prepared by the state engineer and surveyor and submitted to the legislature, pursuant to the provisions of chapter 115 of the Laws of 1898 and the acts amendatory thereof, as such maps were modified by said officer after consultation with the representatives of the several boards of supervisors of the state and with the members of the legislature, were approved by chapter 715 of the Laws of 1907.

The Highway Law of 1908 (Chapter 330 of the Laws of 1908) classified highways and the "state highways,"

being those constructed or improved at the sole expense of the state, were enumerated (Section 120). "County highways," defined as "those heretofore or hereafter constructed or improved at the joint expense of the state, county and town" (Section 3, subd. 2), were further described to be "those highways in each county determined by the commission to be of sufficient public importance to come within the purposes of this chapter, so as to constitute a part of a properly developed system of improved market roads within the county, taking into account the use, location and value of such highways for the purposes of common traffic and travel. Such county highways shall be equitably apportioned by the commission among the several counties without discrimination. In making such apportionment the commission shall take into consideration the total mileage of state highways which shall be hereafter constructed or improved in each county, and also the highways therein which have been constructed or improved prior to the taking effect of this article from funds made available by the issue and sale of bonds as provided in section twelve of article seven of the constitution, so that there shall be an equitable distribution as between the counties of all highways built in whole or in part from such funds." (Section 122.)

By the acts referred to and other acts amendatory thereof, state and county highways have been constructed by general law.

In 1911, prior to this action being brought, chapters 92, 133, 134, 135, 136, 154 and 155 of the laws of that year were enacted. Said chapter 92, which is fairly representative of all of said statutes of 1911 is as follows: "The sum of one million dollars ($1,000,000), to become available immediately, is hereby appropriated, payable out of moneys realized from bonds issued in accordance with the provisions of chapter four hundred and sixty-nine of the laws of nineteen hundred and six, as amended by chapter seven hundred and eighteen of the laws of nineteen hun-

dred and seven and the laws amendatory thereof. The moneys hereby appropriated shall be expended in accordance with the provisions of article six of the highway law, for the construction and improvement of portions of state routes numbers four and twelve, commencing at a point on route number four, on the dividing line between the counties of Broome and Tioga; running thence westerly through the southern portions of Tioga and Chemung counties to Elmira; running thence northerly from the city of Elmira to a point at or near Horseheads, being the intersection of route number twelve with route number four; running thence northerly on route number twelve through the counties of Schuyler and Yates by the way of Watkins to a point on route number six, being the intersection of route number twelve and route number six, as defined by section one hundred and twenty of chapter thirty of the laws of nineteen hundred and nine, so as to complete the connection between state highways already built on the aforesaid routes. And providing the whole of the aforesaid amount is not necessary to complete the aforesaid routes, then the amount unexpended shall be used for the construction and improvement of state route number thirty-six, commencing at a point on said state route number thirty-six, at or near Owego and running in a northerly direction to a point on the dividing line between Tioga and Tompkins counties. No county in which roads are improved under this chapter shall participate in the future annual appropriation of funds for the improvement of state roads until such time as the counties not participating in the funds provided by this chapter shall have received such amount of improvement as will equalize the mileage."

This action is brought to have said acts of 1911 declared unconstitutional and void and of no effect and to restrain and enjoin the state officers having to do therewith, among other things, from awarding and executing any contract and from advertising for any further bids for

highways to be constructed from funds made available by said acts of 1911.

The plaintiff applied to the Appellate Division of the Supreme Court in the third judicial department for an injunction substantially as prayed for in the complaint to continue during the pendency of the action. The court denied the injunction on the express ground that the county of Albany cannot maintain the action. (*County of Albany* v. *Hooker*, 145 App. Div. 945.) Upon application by the plaintiff the court certified that a question of law had arisen which, in its opinion, ought to be reviewed by the Court of Appeals, and it granted leave to appeal to this court, and the question certified is, "Has the county of Albany legal capacity to bring this action?" Our jurisdiction is restricted to a review of that question. (Constitution, article 6, section 9; Code Civil Procedure, section 190.)

It is assumed that by the question submitted it is intended that this court shall determine whether the county has capacity to maintain the particular action stated in the complaint even assuming that a good cause of action in some behalf is alleged.

Authority is not given to the plaintiff to maintain this action by the statutes authorizing the so-called "taxpayers' actions." (General Municipal Law, section 51; Code Civil Procedure, section 1925.) The statutes limit the right to bring such an action to persons and corporations who are taxpayers as therein described and the actions thereby authorized are generally specified, but the action sought to be maintained by the plaintiff is not included therein. It is conceded that there is no express enactment of the legislature authorizing the plaintiff to maintain this action. The state, in the exercise of its sovereign power, has done so in part by dividing its territory into counties and imposing upon them certain governmental and political powers and duties. It has been and is a convenient way of exercising its sovereign authority. In

the exercise of such powers and in the performance of such duties the counties are mere agents of the state and component parts of it.   They are not, in the exercise of such authority, subject to suit any more than the state itself, and certainly they cannot maintain an action against the state of whose sovereign power they are a part, or against state officers who are expressly charged with the performance of sovereign power.   Counties, in the exercise of their powers and duties as component parts of the state, have acquired real and personal property and have exercised certain corporate powers that are distinct from their governmental and political powers and duties.   In the exercise of such corporate powers they have, because of lack of express statutory recognition as corporations, been treated as quasi corporations and have sued and been sued as such; but authority to sue and be sued as quasi corporations has been restricted to matters pertaining to the county in its corporate capacity as distinguished from its governmental and political capacity.

In the Revised Statutes of 1829 it was provided: "Each county, as a body corporate, has capacity,

" 1.  To sue and be sued in the manner prescribed by law:

" 2.  To purchase and hold lands within its own limits, and for the use of its inhabitants; subject to the power of the legislature over such limits:

" 3.  To make such contracts, and to purchase and hold such personal property, as may be necessary to the exercise of its corporate or administrative powers:   *   *   *   .

"No county shall possess or exercise any corporate powers, except such as are enumerated in this Chapter; or shall be specially given by law; or shall be necessary to the exercise of the powers, so enumerated or given " (1 Rev. Stat. part 1, ch. 12, tit. 1, art. 1, secs. 1 and 2.)

It was also therein provided that the powers of a county as a body politic can only be exercised by the board of

supervisors thereof, and that actions and proceedings by or against a county in its corporate capacity shall be in the name of the board of supervisors of such county.

By the Constitution of 1846 (Article 8, section 3) it was provided that "All corporations shall have the right to sue, and shall be subject to be sued in all courts, in like cases, as natural persons." And such provision was continued in the Constitution of 1894 (Article 8, section 3). In 1892 it was provided (Laws of 1892, chap. 686, sections 2 and 3, now County Law, sections 3 and 4) as follows:

"Section 3. A county is a municipal corporation, comprising the inhabitants within its boundaries, and formed for the purpose of exercising the powers and discharging the duties of local government, and the administration of public affairs conferred upon it by law.

"Section 4. An action or special proceeding for or against a county, or for its benefit, and upon a contract lawfully made with it, or with any of its officers or agents authorized to contract in its behalf, or to enforce any liability created, or duly enjoined upon it, or upon any of its officers or agents for which it is liable, or to recover damages for any injury to any property or rights for which it is liable, shall be in the name of the county. * * * "

This court carefully considered the authority and liability of counties as quasi corporations and the effect of the statutes making them municipal corporations and providing as above quoted that actions and special proceedings for or against them shall be in the name of the county in *Markey* v. *County of Queens* (154 N. Y. 675). This court then said:

"The civil divisions of a state into counties had their origin in England; where, preceding the organization of the kingdom itself, they were, thereafter, continued from recognized necessities and government; as other countries had their departments, or their provinces. * * * Differing from England in their origin, in this

country they were first created by the Legislatures of the various colonies and, subsequently, by the states of the Union. They were invested with such corporate attri-butes as were essential to a proper performance of the duties of local government. They were, in effect, subdivisions of the governed territory, established for the more convenient administration of government and hav-ing such powers as were necessary to be exercised for the welfare, advantage and protection of the public within their boundaries. While in the People resided the sov-ereign right to declare the general mode of their govern-ment, it was the appropriate duty of their legislative body to so arrange the territory of the state into civil divisions and to so apportion among them governmental duties, as would best conduce to the advantage of its citi-zens. * * * Having regard to the fact that counties were created such for the better and more convenient government of the state, both upon authority and upon principle, in the exercise of those political powers which appertain to local government and which are for the public benefit, they should be no more liable for damages resulting therefrom, at the suit of a private individual, than would be the state itself. The counties and towns of this state were always bodies corporate for certain purposes, having been endowed with capacities to pur-chase and to hold real and personal property and to make contracts in reference thereto. (R. S. part 1, art. 1, title 1, chaps. 11 and 12.) The corporate powers were of defined and limited extent and in all other respects which concern governmental duties, included among which was the conservation of highways, roads and bridges, they were merely divisions, organized for the convenient exer-cise of portions of the political power of the state. (*Lor-illard* v. *Town of Monroe*, 11 N. Y. 392.) The common-law rule which rested the duty of caring for and repair-ing highways and bridges upon the counties did not obtain in this state. That duty was confided to the

officers·of towns.    \*   \*   \*    That as the counties of this
state were bodies corporate for certain specific purposes,
before the enactment of the County Law of 1892, now
that they are declared thereby to be municipal corpora-
tions, their liability for corporate acts is no further
enlarged than what may be clearly read in, or implied
from, the statute.    Their becoming municipal corpora-
tions in name imports no greater liability; because, by
the third section of the law, their liability for injuries is
confined by the language to that which was existing.
The liability remains as it was, neither greater nor less."
(p. 680.)

Counsel for the appellant after considering the author-
ity of the plaintiff to maintain this action in a brief
showing great industry, research and ability, concludes
by asserting two principles as gleaned from the study of
adjudicated cases as follows:

1. Corporate rights and liabilities may, and do, grow
out of the exercise of public functions and powers by a
municipal corporation, such as a county.

2. A county or town as a municipal corporation has a
right and interest in or to property in its corporate
capacity which it can protect by action, whenever a mis-
application of, or injury to, such property would result in
a special loss to it, and this, although the property is
acquired, held or used as an incident to the exercise of a
public function.

He insists that although the *Markey* case be considered
as a controlling authority in this state for holding that
the capacity of counties to sue and be sued has not been
changed by said statutes in matters relating to their
governmental and political powers, yet that this action
can be sustained as one relating to the corporate rights of
the county.    He bases his conclusions principally upon the
following authorities, viz.: *People* v. *Ingersoll* (58 N. Y. 1);
*Bridges* v. *Board of Supervisors of Sullivan County* (92
N. Y. 570); *Bidelman* v. *State of New York* (110 N. Y.

232); *People* v. *Alden* (112 N. Y. 117); *Strough* v. *Board of Supervisors of Jefferson County* (119 N. Y. 212); *Woods* v. *Board of Supervisors of Madison County* (136 N. Y. 403).

In the *Ingersoll* case it is alleged that the defendant and others obtained and appropriated to their own use a large sum of money to which they were not entitled. It is further alleged that such sum of money was secured by issuing the bonds of the county of New York pursuant to statute and then wrongfully and fraudulently auditing fictitious claims against the county, and obtaining payment thereof from the proceeds of said bonds. An action was brought in the name of the People of the State of New York to recover such moneys so wrongfully and fraudulently appropriated. It was held that the title to and ownership of the money sought to be recovered must determine the right of action. The county of New York was held to be the owner of the proceeds of the bonds and consequently in its corporate capacity the proper party to bring the action. Among other things the court say: "But the taxpayers, as distinguished from other inhabitants of the county, have no peculiar interest to subserve, or right to or interest in the money." (p. 31.)

The court referring to counties further say: "They are trustees only of the property held for public use. They are not the guardians and protectors of private and individual interest or property of the citizen. They may not intervene by action to protect or redress the individual citizen in respect to wrongs or injury to his person or property. Their power as well as duty is restricted to the protection and preservation of property possessed by them in their corporate capacity." (p. 29.)

In the *Bridges* case the action was to recover money wrongfully paid by the town collector to the county treasurer after its collection as taxes from the New York and Oswego Midland Railroad Company, and which had by statute been expressly appropriated to the town. The

court say: "Although such moneys are by the act specially devoted to the purpose of paying the principal and interest upon the bonds of the town and cannot be legally diverted from such purpose, yet the equitable if not the legal title of the town to them, until they are finally applied to such object, cannot be questioned." (p. 576.)

In the *Bidelman* case the court reversed a judgment rendered by the Court of Claims for the defendant and directed a judgment for the plaintiff as supervisor of the town of Gaines for damages occasioned by injuries to three public bridges and a culvert of the town injured by water flowing from a break in the Erie canal. The decision of this court was placed upon the ground that by statute the "primary responsibility for the maintenance and repair of highways and bridges is cast upon the several towns of the state." And the court further say: "Being charged with these various duties and made subject to liability, it would seem to follow that the town had such an interest in the preservation of its bridges as would give a right of action and a remedy over against any person who, intentionally or by negligence, made repair or rebuilding necessary." (p. 235.)

In the *Alden* case the question involved was simply one of costs. The validity of the judgment for costs awarded against the county of Warren on the dismissal of the complaint depended upon the question as to whether an action to recover a penalty under the game laws brought by the district attorney of the county is an action "to recover money or property or to establish a right or claim for the benefit of a county," within the provision of section 3243 of the Code of Civil Procedure. It was held that it was an action to recover money or property for the benefit of the county because the county in its corporate capacity would, if successful, receive one-half of the penalties collected.

In the *Strough* case the plaintiff, as supervisor of the town of Orleans, in Jefferson county, brought an action

against the county to recover the amount of taxes collected from a railroad corporation and which had been misappropriated by the county treasurer of the county and the recovery is based upon the *Bridges* case.

In the *Woods* case the town of Stockbridge, in the county of Madison, had issued its bonds under the provisions of chapter 398 of the Laws of 1866 in aid of the New York and Oswego Midland Railroad Company. In 1869 a statute was passed providing that certain taxes should be invested by the county treasurer and held as a sinking fund for the redemption of the bonds so issued. The board of supervisors of the county and said treasurer diverted said taxes to general county purposes. An action was brought by the supervisor of the town against the board of supervisors of the county to recover the moneys so diverted. The question as to what taxes were diverted was somewhat complicated, but it is enough for present purposes to say that the action was sustained. The taxes had been actually collected and the title of the town to the money so collected determined the question as to the right of the plaintiff to maintain the action.

The principles formulated by counsel for the appellant find support in the authorities cited, but such decisions fall very far short of sustaining the appellant's right to maintain this action. Our statement of the cases so principally relied upon by the appellant shows that each relate to funds or property of a municipal corporation in its possession or to which it had a right to immediate possession. The ownership of the funds or property or an expressly defined statutory duty determined in each case in whom the right of action existed and whether it so concerned the corporate property of the municipality as to enable the corporation to bring and maintain the action. In the case now before us there is no fund or property mentioned in the complaint, the legal or equitable title of which is in the county. The action is wholly preventive and one representative in its character. It seeks to construe a

constitutional provision and to restrain individual officers of the state from carrying out the directions of the legislature affecting work that pertains to sovereign power. The statutes of 1911 all relate to state highways to be constructed with state money. The county of Albany as a corporation is not required to contribute toward the improvement of highways pursuant to the constitutional provision or toward a fund to pay the bonds that may be issued pursuant to the statutes passed under such constitutional provision. The taxpayers of the county of Albany may at some time be required to acquire lands to be held for the purposes of a highway forever and they may be required to pay some part of the bonds which are sold to furnish the money to improve the highways pursuant to the provision of the Constitution. The inhabitants of the county, taxpayers and others, may be interested in having an equitable proportion of the highways under the provision of the Constitution within the bounds of its territory.

The appellant does not bring this action to prevent its being required to acquire lands upon which the state highways may be constructed or to prevent the taxpayers of the county from being required to pay any part of the bonds sold for the purpose of acquiring money to construct such highways. The purpose of the action is to preserve the general and individual interests of the taxpayers and inhabitants of the county by requiring that public money be spent in the vicinity of their homes. It has immediate reference to the control of a governmental and public work. Counties as parts of the sovereign power are interested in the highways of the state but such interest is governmental and public and not otherwise. An equitable apportionment of the highways among the counties as provided by Constitution or by statute is not further defined. Whether it is to be based upon relative population, assessment or area does

2

not appear. It seems rather to be left for determination and apportionment among the counties after considering every fact that in any way bears upon the equity of an apportionment. The acts of the legislature relating to such apportionment do not in any way pertain to the corporate powers of the county. They are governmental and public and not personal and private corporate affairs.

Under the Constitution and statutes, so far as they relate to state highways, there is no necessity that the state call upon counties in any manner relating to the performance of work or the raising of money. It is convenient in acquiring lands to be held for the purposes of a highway forever and in the assessment of taxes among the inhabitants of the state and in the collection thereof, but not necessary that the same be done through the municipalities into which the state is divided for governmental purposes. The counties in their corporate capacity do not build the roads or raise money towards their construction. The raising of money by tax when necessary for state highways is, in itself, a governmental act. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392.) In that case it was said: "In everything which concerns * * * the conservation of highways, roads and bridges * * * and the assessment and collection of taxes, the several towns are political divisions, organized for the convenient exercise of the political power of the state; and are no more corporations than the judicial, or the senate and assembly districts." (p. 394.)

With no fund or property in existence, the title to which is in the county, and no funds or property in the possession of another to which the county is entitled to possession, and the entire subject being one of governmental and public policy, independent of the corporate rights of the county, the action cannot be maintained by the plaintiff, and the wrong, if any, created and existing by the acts of the legislature, must be corrected by the legislature, or by an action where the people, as distin-

guished from a municipal corporate body, are before the court.

The order should be affirmed, with costs, and the question certified answered in the negative.

Cullen, Ch. J.   For the purpose of discussing the question certified to us by the Appellate Division of the Supreme Court we must assume the unconstitutionality of the statutes assailed and that expenditures made thereunder would be illegal.   The question then is whether the county of Albany has any standing to maintain an action in equity to restrain the misappropriation of the funds of the state.   I concur in the opinion of Judge Chase that it has not, because it is not a taxpayer and is not affected in its property rights by such misappropriation; but there is a further objection.   Until the taxpayers' statute was passed it was held that even a resident citizen and taxpayer had no other rights than such as were common to all the people of the community and no standing in court to restrain an alleged delinquency in the administration of public affairs.   (*Doolittle* v. *Supervisors of Broome Co.*, 18 N. Y. 155; *Roosevelt* v. *Draper*, 23 N. Y. 318.) The Taxpayers' Act (originally Laws of 1872, ch. 161, now Code Civ. Pro. § 1925, and General Municipal Law, § 51) authorizes such actions against only municipal corporations and their officers, not against state officers. Hence an action to restrain the expenditure of state moneys on the highways mentioned in the complaint, if such expenditure is illegal, can be brought by the people of the state alone.

Gray, Haight, Vann, Werner and Willard Bartlett, JJ., concur with Chase, J., and Cullen, Ch. J.

Order affirmed.