Carrie Brown, as Widow and Executrix, etc., of Manheim Brown, Deceased, Appellant, v. The State of New York, Respondent.

*State — claim against State for death of claimant's testator alleged to have been caused by negligent failure of trial judge to safeguard health of deceased while he was acting as juror — enabling act, conferring jurisdiction on Court of Claims to hear claim, did not acknowledge or create liability — no recovery.*

Appeal by the claimant from an order of the Court of Claims, entered in the office of the clerk of said court on February 9, 1922, dismissing the claim, and also from a judgment of said court in favor of the defendant, entered on February 20, 1922, pursuant to said order.

Judgment affirmed, with costs, on the authority of *Sherlock v. State of New York* (198 App. Div. 494; 202 id. 767; Id. 771; affd., 235 N. Y. 515). H. T. Kellogg, Acting P. J., Van Kirk and Hasbrouck, JJ., concur; Kiley, J., concurs, with an opinion; Hinman, J., dissents, with an opinion.

Kiley, J. (concurring): Appellant's husband and testator was a juror in the case of *People v. Molineux* (168 N. Y. 264). It is alleged that the trial commenced in November, 1899, and lasted until in February, 1900; that, in the latter part of January, as the trial was approaching the end, the claimant's testator was taken ill with grippe, bronchitis, rheumatism and lymphangitis; that said condition, sickness and disease were caused by the unsafe, unsanitary, unwholesome, and ill-ventilated condition of the court house; that a two weeks' adjournment was necessary, and to obviate longer delay, the judge agreed to see that Mr. Brown had proper care while in the court room and proper conveyance when leaving the court house, and that the condition complained of, as aforesaid, should be corrected; that this was not

---

done, and that by reason of such illness and lack of care, he died October 6, 1913. It is admitted by claimant that at all times from the close of the Molineux trial until the time of her husband's death there was no statute of this State under which this claim could be presented, nor any tribunal before which the same could be heard; that after his death and until 1920 there was no statute by which she could present her claim and seek redress in any of the courts of this State. In the year 1920 an Enabling Act was passed by the State Legislature (Laws of 1920, chap. 754) conferring jurisdiction upon the Court of Claims to " hear, audit and determine the alleged claim of Manheim Brown against the State," etc., and so far as pertinent here reads as follows:

" Section 1. Jurisdiction is hereby conferred upon the Court of Claims to hear, audit and determine the alleged claim of Manheim Brown for injuries claimed to have been sustained by him while acting as a trial juror in the Court of General Sessions of the Peace in the county of New York between December fourth, eighteen hundred and ninety-nine, and February eleventh, nineteen hundred, and the State hereby consents in such alleged claim to have its liability determined, and the court may award to and render judgment for the claimant for such sum as may be just and equitable, notwithstanding the lapse of time since the accruing of damages or the death of the original claimant, provided the claim herein is filed with the Court of Claims by the widow of said Manheim Brown within one year after the passage of this act. No award shall be made on such alleged claim except upon such legal evidence as would establish a liability against an individual or corporation in a court of law or equity.

" § 2. Nothing herein contained shall be regarded as conceeding the validity of such alleged claim upon the part of the State, nor as waiving by implication, on behalf of the State, any defense thereto."

The act took effect immediately. The claim was filed within one year as in and by the act provided. The procedure and language, so far as applicable here, is practically the same as found in the Court of Claims Act (Code Civ. Proc. § 264) and its substitute in the Civil Practice Act* as amended by chapter 482 of the Laws of 1920, now section 12 of the Court of Claims Act.† In view of the argument of counsel for appellant the items of the claim may be here stated, viz.: Loss of business profits and earnings, $70,000; pain and suffering, $20,000; expenses incident to care including services of physicians and nurses, medicines, supplies and journeys to and expenses at health resorts, $5,000. The argument of counsel for appellant referred to above is to the effect that the State does not stand on its sovereignty, but concedes its liability for something, and leaves it to the Court of Claims to say whether all of the foregoing items of the claim are just and equitable, and if not, said court may say what parts are, and render judgment therefor. In other words that the Enabling Act makes the State liable if the facts stated in the claim are true. In effect, that the phrase in the act, " such legal evidence as would establish a liability," etc., refers to proving that the

---

* *Sic.*  See Code Civ. Proc. § 264.— [REP.

† Code Civ. Proc. § 264, as amd. by Laws of 1920, chap. 482, is now Ct. Claims Act, §§ 12, 23, 26, and Id. § 15, as amd. by Laws of 1921, chap. 474. Amendments effected by Laws of 1920, chap. 482, were incorporated in Court of Claims Act, § 15, as amd. by Laws of 1921, chap. 474.— [REP.

claimant's intestate suffered the losses set forth in the claim.  After the filing of the claim the Attorney-General, by order to show cause, moved to dismiss the same upon the grounds:  *First.*  That it did not state facts sufficient to constitute a cause of action.  *Second.*  That the State is immune from liability for loss or damage because of negligence, tortious acts, etc., of its officers, agents or employees. *Third.*  That the State is immune from damages arising out of a governmental function.  *Fourth.*  That the State by its enactment, in this case, did not confer jurisdiction upon the Court of Claims to hear this claim.  Upon the hearing of said motion the contention of the State was upheld, and from an order dismissing said claim and from the judgment based thereon, this appeal was taken.  While the motion to dismiss the claim is in the nature of a demurrer and concedes the truth of the allegations of the claim, we must determine whether any cause of action is alleged.  In the claim it is alleged that after such illness had continued for about two weeks claimant's intestate was advised by his physician, that he had so far recovered " that he could again attend at court and serve as a juror, provided short sessions were held with long recesses so that said Manheim Brown might rest during such recesses, and provided a carriage were furnished to take him about and relieve him from the necessity of walking, and provided every care were taken to guard him from further exposure or undue strain.  Said physician's opinion was made known to the presiding justice and officers of said court, who duly agreed that said Manheim Brown would be provided with all such means and accommodations, and that every effort would be made to safeguard his health;" and further alleges that relying on such promise he resumed jury duty.  The next allegation is, that this promise was not performed on the part of those making it; that a relapse occurred from which Mr. Brown never recovered and that his condition of ill health continued until his death as aforesaid. Assuming that the presiding judge, sheriff and officers, referred to in the claim, were officers of the State in a certain degree, how can it be held that the promise alleged to have been made by them was the exercise of any functions arising within their province as such officers?  It is said that claimant's intestate was not free to abandon his position as juror; that he was restrained in liberty, action and execution of intention, and that such restraint was exercised by the judge, sheriff and officers of the court.  If the physical condition of Mr. Brown was such as alleged in the claim, the exercise of such restraint was outside of their function or duty, the results from which, neither the State, nor any other municipality, could be held liable.  I fail to see where it casts even a moral responsibility upon the State.  To analyze further what is involved in this promise, if made, as alleged:  The heating, lighting, cleanliness and ventilation devolves upon the janitor, not an officer of the State.  If repairs or changes in construction or design were necessary to carry out the promise, that devolved upon the board of supervisors or other similar board, either of the board's own volition, or by order of the court.  If the order of the court was disobeyed it could be enforced by contempt proceedings and not otherwise.  It seems to me if such promise was made, it was personal to the individuals as such, and not a State function.  Lapse of time precludes any action against the individuals, if such right of action ever existed. The county, as such, was never liable upon this claim (*Alamango* v. *Supervisors of Albany County,* 25 Hun, 551; *County of Albany* v. *Hooker,* 204 N. Y. 1) for the reason that it was not carrying on a corporate activity permitted to political

divisions of the State, outside of its State functions. The same is true of a judge, while he is one of the constitutional officers of the State, he may not bind the State by any act or promise of his outside of the State function he exercises as such officer. Conceding, if it is so, that the foregoing suggestions are correct, the appellant urges that the Legislature, by its Enabling Act, has, notwithstanding, imposed a liability upon the State. Concede that such was the attempt, can a legal liability be created, when no moral liability theretofore existed? It may prohibit or permit certain acts and policies; it may fix rules of conduct and procedure; it may fix penalties, not in conflict with the Constitution or with the police power inherent in the people; but it cannot usurp the functions of the judicial branch of the government and say a legal liability exists, if in fact, none does exist. It is elementary that the State is not liable for the torts of its officers; that the rule of *respondeat superior* does not apply between the State and its officers. From the foregoing consideration of all of the facts appearing in the record and briefs of counsel, and such consideration is had, only, to determine whether, if a trial was had, a cause of action could be maintained; I am satisfied a cause of action could not be maintained. Aside from such conception, I am satisfied that the Enabling Act simply waived the Statute of Limitations and permitted the filing of the claim as therein provided: that the limitation placed upon section 264 of the Code of Civil Procedure in *Smith* v. *State of New York* (227 N. Y. 405) applies to the case at bar. In *Sherlock* v. *State of New York* (198 App. Div. 494; 235 N. Y. 515) the effect of an enabling act (Laws of 1919, chap. 581) was involved. While the phraseology is different from that used in the act under consideration, it is, in essence, the same. Chapter 611 of the Laws of 1918 is an enabling act. This court had it under consideration in the case of *Lewis* v. *State of New York* (197 App. Div. 712). The Legislature resorted to every devise known in the use of the English language, to commit, so far as it was legally possible so to do, the State to liability for Lewis' death. An attempt was made to avoid every safeguard in behalf of the State. This court held that the effect was to waive the Statute of Limitations, and reversed the judgment rendered by the Court of Claims.

The order and judgment of the Court of Claims should be affirmed.

HINMAN, J. (dissenting): The negligent acts complained of include acts of the justice and the officers of the court in failing to keep their promise as to proper recesses for permitting the deceased to rest and in failing to have a carriage to relieve him of unnecessary exertion and exposure. Such carriage was not furnished. He was compelled to walk and on one occasion in a heavy downpour of rain. Short sessions were not had with opportunity to rest but long sessions were had lasting until late in the evening. Of course, this was a promise in the performance of a governmental function and the usual rule would exclude a recovery; but I cannot believe that the Legislature intended to hold any such string upon its offer to waive the State's immunity. Such objection was too obvious and apparent at the time of the passage of the Enabling Act. The act itself recites that the injury arose out of service as a trial juror, plainly a governmental function. We cannot assume that the Legislature blindly waived immunity but that, in the performance of its duty, it carefully considered the nature and scope of the claim. The question resolves itself into an interpretation of the language of the Enabling Act. This act should be interpreted to exclude any

question whether the justice and his court officers, who were acting under his directions, were performing a governmental function or were acting beyond the scope of authority to bind the State. I think the theory of the Legislature was to hold the State liable upon the claim if justice and equity would authorize a recovery against an individual or corporation in similar circumstances and that such claim could only be proved by such evidence as would be available to a plaintiff in an ordinary action against such an individual or corporation. I think the Legislature referred to the quality of the evidence as such and not to the substantive law of the case. In section 2 of the act, reference is made to not waiving " any defense thereto " but I cannot believe this has universal application. If so, it would include the right to raise the defense of " governmental function " to which I have referred, in the performance of which the State would ordinarily be immune. Reading both sections together, I think the Legislature meant that the State should be able to raise any defense that a private individual or corporation could to the claim presented. The sole question then is the effect of a promise, unfulfilled, whereby the deceased was induced to perform an unremunerative service on his part, beneficial to the promissor and by the unfulfillment of which the deceased was made ill without any fault on his part. Such " unjust enrichment " ought to be actionable in good morals in a case involving a private individual as the promisor. We must assume the truth of the allegations of the pleading and I think they spell liability justifying a recovery. There is a moral obligation on the part of the State, acting through its judges to treat jurors in a humane manner. It is important that we judges should consider that jurors are entitled to the consideration which we would demand for ourselves under similar circumstances. If the allegations of this complaint are true there was a gross injustice done to this conscientious juror which could have been obviated by keeping the promise made by the court. The trial began in November and lasted into February and thus created a most unusual if not unprecedented situation, calling for tremendous sacrifice by the jury. By lengthening the sessions into the night instead of shortening them as promised, and by the making of the other promises to provide proper care for this sick juror, upon which he relied and continued to serve, but which promises were unfulfilled, resulting in his permanent and fatal injury, a mistrial was obviated, and the trial was shortened and completed at a great saving of the State's money but at the expense of this man's health and life. The State can afford to pay its moral obligation. I believe the Legislature has recognized such an obligation, if these allegations are proved to be facts. The State is now providing compensation insurance for some of its employees in far less meritorious cases. I dissent.