John B. Sterley, S.
Mary A. J. E. Eastgate died testate a resident of Ulster County on October 12, 1916, leaving a last will and testament which was admitted to probate in the Ulster County Surrogate’s Court on April 10, 1917, which will was recorded in book 9 of wills at page 320.
Paragraphs Second, Third and Fourth of said will bequeath specific items of personal property. Paragraph Fifth then provides: “ I do give, devise and bequeath all the rest, residue and remainder of my property both real and personal, of every kind and nature, and wheresoever situated, unto my sister, Louisa Sherman, to have and to hold the same, together with the rents, issues, profits and income arising therefrom unto the *276 said Louisa Sherman for and during the term of her natural life. And after the death of my said sister, Louisa Sherman, I do direct that my estate be distributed as follows:” Sixth: Gives Lillian Scoresby Clark $5,000. Seventh: Gives items of personalty to Lillian Scoresby Clark and “if at her death she shall be survived by any child or children said articles shall descend to such child or children and to their heirs and assigns forever, but in case the said Lillian Scoresby Clark shall die without issue said articles shall be divided equally between my niece, Carolyn Scoresby Edwards and my nephew, Fred S. Scoresby”; and gives other articles of personalty to niece Carolyn Scoresby Edwards and nephew, Fred S. Scoresby. Eighth: Gives certain realty to Lillian Scoresby Clark with power of sale to executors. Ninth: Gives residue to Til ban Scoresby Clark for life. Tenth: “ Upon the death of the said Lillian Scoresby Clark I do give, devise and bequeath the real and personal property provided for in paragraphs Eighth and Ninth of this Will, together with all the rest, residue and remainder of my property both real and personal, of every kind and nature and wheresoever situated, unto the heirs of Thomas S. Scoresby and Horatio N. Scoresby or so many of them as shall be living at the death of said Lillian Scoresby Clark, to be divided between them equally, share and share alike.”
The said Lillian Scoresby Clark, the second of the life tenants, died November 18, 1953, without issue. A question is presented to this court for determination on a construction proceeding as to what heirs of Thomas S. Scoresby and Horatio N. Scoresby take upon the death of the second life tenant and is also as to whether the heirs of Thomas S. Scoresby and Horatio N. Scoresby who are living at the date of the death of Lillian Scoresby Clark are the heirs who take under the Tenth paragraph of the will of Mary A. J. E. Eastgate.
.It is necessary at this time to give consideration as to the intent, meaning and construction of the word “ heirs ”. Previously, the terms ‘ ‘ heirs at law ’ ’ and ‘ ‘ next of kin ’ ’ were used to distinguish the persons who would take in the first instance the real property and in the second instance the personal property of a decedent who died intestate. Under the revisions made of the statute in 1929 and a second added to it in 1938, there was a change in the use of these terms. By section 81 of the Decedent Estate Law the distinction between these terms was abolished. Further, it is now provided that when used in a statute, in a will, or in any other written instrument prescribing the devolution of property rights and unless the statute, the will or the instrument shall expressly or impliedly *277 declare otherwise, the terms ‘ ‘ heirs ”, “ heirs at law “ next of kin ” and “ distributees ” and any terms of like import shall be deemed and shall be construed to mean the distributees, including a surviving spouse, who are defined in section 83 of the Decedent Estate Law. (Decedent Estate Law, § 47-c.)
Prior to the enactment of section 47-c in 1938 it was held that the words ‘ ‘ next of kin ’ ’ signified blood relatives and that the class had not been extended by section 81 of the Decedent Estate Law abolishing the distinction between heirs at law and next of kin or by the provisions of section 83 permitting a surviving spouse to share in decedent’s estate. (Matter of Waring, 275 N. Y. 6.)
It was the intention of section 47-c of the Decedent Estate Law to broaden the meaning of the word ‘ ‘ heirs ’ ’ to include all who would take under the statute of distribution. However, this section has no application here as it was adopted in 1938 and applies only to wills executed after that date. Therefore, we are concerned only with construction prior to the enactment of section 47-c. Prior to the enactment of said section where there was a devise or bequest of real or personal property or both to the ‘ ‘ heirs “ heirs at law ” or “ next of kin ’ ’ of the testator or of a particular person, the terms have invariably been construed as used in their technical meaning. Strictly speaking, as previously stated, heirs and heirs at law apply to real property and next of kin to personalty. However, they have largely been construed interchangeably. In the case of real property a gift or devise to the “ heirs ”, “ heirs at law ” or “ next of kin ” of a testator or of a certain other person has been held to intend a gift to those persons who would inherit, the real property in the case of the intestacy of the testator or of the designated person. In the case of personal property a gift to the heirs, heirs at law or next of kin of the testator or of another person has been held a gift to those persons who would succeed to the personal property of the testator or of the other person in case he died intestate.
It has been uniformly held that the word ‘ ‘ heir ’ ’ when applied to the succession of personal estate means “next of kin”. (Matter of Scott, 204 N. Y. 8. 478 and other cases cited thereunder.)
In many construction proceedings the rule has frequently been stated that consideration in any event must be given to an intention evidenced by the will or by the surrounding circumstances.
The gift in paragraph Tenth of the will of Mary A. J. E. Eastgate commences with the words “ upon the death of the *278 said Lillian Scoresby Clark I do give, devise and bequeath the real and personal property ’ ’. The words ‘ ‘ upon the death of ’ ’ shall be construed to relate to the time of possession and enjoyment and not to vesting. In the case before the court the gift is ‘ ‘ unto the heirs of Thomas S. Scoresby and Horatio N. Scoresby or so many of them as shall be living at the death of Lillian Scoresby Clark, to be divided between them equally, share and share alike.” It seems clear by the express language that the gift did not vest in the heirs of Thomas S. Scoresby or Horatio N. Scoresby at the date of the death of Mary A. J. E. Eastgate for the reason that survivorship at the date of death of the second life tenant is an express condition before there is a taking under the will. The interest of an heir of Thomas S. Scoresby or Horatio N. Scoresby living at the date of death of Mary A. J. E. Eastgate was not alienable or descendible as is a vested remainder in the event such heir died before Lillian Scoresby Clark. Whether the remainder had a descendible and alienable interest is primarily determined by a consideration of the testator’s intention as expressed in the will. In the will before this court it seems clear that survivorship is an express condition of the gift.
What the will here does is to make a gift to a class. ‘ ‘ In legal contemplation, a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number.” (Matter of Kimberly, 150 N. Y. 90, 93.)
I am of the opinion that the rule has been definitely well established that when property at a future date is to pass to a certain class of persons it will be distributed among those who compose such class only at the time of distribution. In Bisson v. West Shore R. R. Co. (143 N. Y. 125) the will, there construed, contained the following provision: “To my said wife, Maria Bernhardina Wackerman, I give and bequeath all my real estate that I may die siezed with for and during the term of her natural life, provided she, my said wife, shall remain my widow; and from and after her decease or marriage (which shall first happen) I give, devise and bequeath all my said real estate unto my heirs and my said wife Maria Bernhardina’s heirs, their heirs and assigns forever, share and share alike.” The wife survived and died without issue. When she died her heirs were 16 in number representing three stocks and the heirs of her husband were 14 representing three stocks. At the date *279 of the death of the husband she had 11 heirs representing three stocks, and he had 10 heirs representing five stocks. The court held that all persons who at the time of the widow’s death would answer the description of heirs at law, either of husband or wife, took equally per capita and not per stirpes. The court said (p. 130): “ Though the heirs of the testator were determinable at his death, yet the gift to them was not, by the terms of the will, to vest in possession until after the termination of the life estate given to the widow. That was the time fixed for the gift to take effect and then was the time when the persons would be ascertained, who, coming under the description of heirs of the testator, would be entitled to share with the heirs of his widow, in the distribution of the estate. Within that time the number of his heirs might be diminished by death, or increased by birth. ’’
A very important case in point is that of New York Life Ins. Co. v. Winthrop (237 N. Y. 93). In that case the testator died in 1892 and gave one third of his estate to trustees to hold for wife during her life and on her death to the daughter Nellie Bostwick Morrell for life and upon the death of his ‘ ‘ said wife and daughter to convey, assign and deliver the said estate real and personal so held in trust to the lawful issue of Mrs. Nellie Bostwick Morrell share or share alike, or in default of such issue to the next of kin of Mrs. Morrell ” (pp. 100-101). Nellie Bostwick Morrell died without issue in 1906 and her mother died in 1920. The court said as follows (p. 101): “On the one hand it is asserted that the next of kin in being at the death of Mrs. Morrell acquired a title that was indefeasible though she died before the end of the trust and so before the date of distribution. * * * On the other hand it is asserted that the class
was to be ascertained when there was a duty to convey and deliver, and that survivorship, at that time was one of the conditions of the gift.” At page 102 the court said as follows: “ The mandate is to distribute among issue, and ‘ in default of such issue ’ among next of kin. But in default of issue when! It happens that none were born. Plainly, if any had been born, their interests would have been defeasible, at least until their mother’s death. This, indeed, is conceded by counsel for respondents. The very provision for the substitution of another class, the class of next of kin, is a token that survivorship was thought of as a condition of the gift (Salter v. Browne, 205 N. Y. 204, 213; Bowman v. Bowman, 1899 A. C. 518, 523, 526). No doubt, it would have been possible by appropriate words, as, for example, by words of direct gift, coupled, it may be, with *280 other tokens of intention (Matter of Bump, 234 N. Y. 60), to clothe the issue, if any, with an indefeasible interest, which would have passed to their own successors in title, though they died before their mother. That is not what the testator did. We deal, therefore, with a gift which, at least up to a certain point, was contingent and defeasible, a gift to which survivor-ship at some time in the future was annexed as a condition. Since a contingency existed, since the testator did not intend that the interests of issue should vest as soon as they were born, his expectation must have been that the vesting would be postponed until the trust was at an end (Bowman v. Bowman, supra; Young v. Robertson, 4 Macq. 314, 319, 320; Vincent v. Newhouse, 83 N. Y. 505, 511). If it was postponed till then for issue, it was postponed for next of kin. ’’
In discussing distinctions between vested and contingent remainders, the court said (p. 103): “ The only significant distinction for the purpose now in view is between an estate that is absolute and one subject to conditions.”
The decision emphasizes that those who took had to survive and further the decision held that survivorship being a condition it was survivorship at the time of distribution. In the instant case a gift to so many of the heirs of Thomas S. Scoresby and Horatio N. Scoresby living at the date of death of Lillian Scoresby Clark is implicit with the condition of survivorship to the time of the death of the said life tenant. Survivorship here at the time of distribution should also be determinative of the members of the class. In the Matter of Eldred (138 Misc. 645) the will gave property to the daughter for life and should she die without issue gave five sixths to children of deceased brother and one sixth to children of nephew. Two of the children of the deceased brother predeceased the life tenant and an issue was raised whether they had a vested remainder. The court rejecting this contention said (p. 647): “ The gift was clearly contingent. Distribution was postponed until the death of the life beneficiary. It is well settled that where final division and distribution is to be made among a class, the benefits of a will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. * * * Only then does the remainder vest. ’ ’
There is but one conclusion for this court to arrive at in view of the cases heretofore cited which appear to have a direct bearing upon the case before the court and that is to say that the gift to the heirs of Thomas S. Scoresby and Horatio N. Scoresby are such heirs who were living at the date of the *281 death of the life tenant, Lillian Scoresby Clark, and not to the date of death of Mary A. J. B. Eastgate. I further hold that the interest of the heirs living at the date of the death of the said life tenant is per stirpes and not per capita and a distribution should be made accordingly.
A decree may be so entered.