RICHARD J. BOWEN, City Manager of the City of Long Beach, et al., Respondents, v STATE BOARD OF SOCIAL WELFARE OF THE STATE OF NEW YORK et al., Appellants.

Second Department, December 20, 1976

*Louis J. Lefkowitz, Attorney-General (A. Seth Greenwald* and *Samuel A. Hirshowitz* of counsel), for appellants.

*Morris H. Schneider, Corporation Counsel (Stephen Jenkins* of counsel), for respondents.

TITONE, J. This is an appeal by the defendants from an order of the Supreme Court at Special Term, entered November 5, 1975 in Nassau County, which denied their motion to dismiss the plaintiffs' complaint, which seeks a declaratory judgment and injunctive relief, on the grounds, *inter alia,* of lack of standing, failure to exhaust administrative remedies and failure to state a cause of action. We affirm.

The threshold question presented by the defendants' appeal is whether, under the circumstances of the instant case, a municipality, as a creature and instrumentality of the State,

can compel the State, vis-à-vis the defendant State agencies, to abide by its own laws.[1]

The City of Long Beach and its City Manager, Richard J. Bowen, charge in their complaint that the three defendant State agencies, namely, the Department of Mental Hygiene, the State Board of Social Welfare and the State Department of Health, have capriciously and arbitrarily released mental patients from State institutions into the Long Beach community without securing proper supervision and adequate facilities for their aftercare, and in wanton disregard of their duty to co-operate with the community, in violation of the provisions of sections 7.05, 9.03 and 29.15 of the Mental Hygiene Law, section 758 of the Executive Law and section 2800 *et seq.* of the Public Health Law. The plaintiffs further assert in their complaint that the depositing of 600 to 700 mental patients by the State in the community has caused the City of Long Beach to drastically increase municipal expenditures for additional police, hospital, medical and other services.

The question of whether a municipality may ever have the right to sue its creator transcends the question of whether the municipality has sufficient interest to maintain the action. The question should not be masked behind principles of standing. Indeed, it addresses itself to the fundamental concept of sovereign immunity and challenges the State as a sovereign in a most sensitive posture. Simply put, should the judicial branch of the government ever permit a city, a governmental subdivision, to compel its parent-creator to comply with the latter's own laws. Having raised this question *sua sponte,* we unanimously find that it can be so permitted.

The doctrine of sovereign immunity from suit is rooted in the monarchial semireligious tenet that " 'the King can do no wrong' " *(Glassman v Glassman,* 309 NY 436, 440; Borchard, Governmental Liability in Tort, 34 Yale LJ 1, 2). Today the doctrine is more commonly regarded as a rule of social policy, addressed to the protection of the State against burdensome

---

1. This is an issue of first impression for this court. Research indicates that it is undecided in any jurisdiction. In *City of Boston v Massachusetts Port Auth.* (444 F2d 167), the First Circuit articulated this very issue in a footnote, but did not determine it. The city, a municipal corporation, filed a complaint alleging that the noise of airplanes taking off and landing at a local airport diminished the value of public property and amounted to a deprivation of property without due process of law. The court stated that "[w]hether a municipality can assert such a claim against a state agency which is allegedly acting in a lawless manner is an issue, crucial to the City's case, which we do not reach" *(supra,* p 168, n 1).

interference with the performance of its governmetal functions and preservation of its control over State funds, property and instrumentalities *(United States v Lee,* 106 US 196, 206; Block, Suits Against Government Officers and the Sovereign Immunity Doctrine, 59 Harv L Rev 1060, 1061). This is a more realistic attitude which is compatible with our present system of government.

Sovereign immunity, where it exists, extends not only to State officers and agencies, such as the defendant agencies here engaged in carrying on governmental functions, but also to State officers acting in a similar capacity. A suit against such an officer or agency is regarded as one against the State itself *(Psaty v Duryea,* 306 NY 413, 420).

The State has relinquished some of its immunity and thus, by consent, it has permitted suits against itself. The Legislature, in its enactment of the declaratory judgment provision (CPLR 3001, formerly Civ Prac Act, § 473), placed no limitation on its use. The State has been made a proper party to a declaratory judgment action where citizen plaintiffs did not seek to establish a claim against the State or to demand any affirmative relief *(Glassman v Glassman, supra).*

Declaratory judgment actions have also been maintained between a municipality and the State, or a department of the State, where the plaintiff sought to compel the State to comply with its own laws and was not seeking monetary relief (cf. *City of Rome v State of New York,* 25 AD2d 486, wherein the City of Rome maintained an action to declare that the State was responsible for the maintenance of a bridge spanning a canal within the city; *City of New York v Maltbie,* 248 App Div 39, wherein the city maintained an action, *inter alia,* to declare that the Public Service Commission had no jurisdiction to determine and fix rates for water and hydrant service in the City of New York; *Town of Ohio v People,* 264 App Div 220, wherein the town maintained an action to declare that a certain highway therein was not a town highway so that the town was not responsible for its repair and maintenance; 17 McQuillin, Municipal Corporations [1967 rev vol], § 49.04)[2].

Only in *Town of Ohio v People (supra)* did a defendant raise the argument that the plaintiff could not maintain an action against its creator, the sovereign State, or against officers of

---

2. Other jurisdictions have displayed some sensitivity toward the situation (see *State of Florida v Cochran,* 112 So2d 1 [Fla]; *City of Santa Rosa v Jaramillo,* 85 NM 747).

the State, relying upon the Court of Appeals decision in *County of Albany v Hooker* (204 NY 1). That case, and the line of cases which emanated therefrom, established that a public body has no standing to challenge a State statute so as to restrict its governmental power. Those cases, however, are distinguishable[3]. They involved a municipality's constitutional attack of a tax appropriating statute[4] *(County of Albany v Hooker, supra; Board of Educ. v Allen,* 20 NY2d 109; *City of Buffalo v State Bd. of Equalization & Assessment,* 26 AD2d 213), or a municipality's constitutional attack of a State statute as violative of the Fourteenth Amendment *(Black Riv. Regulating Dist. v Adirondack League Club,* 307 NY 475)[5].

Although the City of Long Beach is not precluded from instituting a suit against the State by virtue of its status as a municipal corporation, the question of its standing is an independent issue. We hold that standing exists in this case.

Under the traditional legal interest test, standing to sue requires that a party demonstrate that a personal property right will be directly and specifically affected *(Matter of Taylor v Sise,* 33 NY2d 357, 362; *Schieffelin v Komfort,* 212 NY 520, 530). In their complaint, the plaintiffs herein allege that the defendant State agencies have directly and adversely affected the plaintiff municipality by arbitrarily depositing large numbers of mental patients into the Long Beach community without regard for the ability of the city to provide for the additional police, medical, hospital and other municipal services necessitated by this influx, imposing a financial burden which was unreasonable and detrimental to its economic

---

3. The Fourth Department distinguished the case of *Town of Ohio v People* (264 App Div 220, 222, *supra)* from *County of Albany v Hooker (supra)* as follows: "This *[Town of Ohio]* is not a case in which it is sought to establish a claim against the State nor is any affirmative or coercive relief demanded against the State or any of its officials. It is not in effect an action against the State in the same sense as the cases wherein the doctrine of immunity from suit against the State and its officials has been upheld. The object sought in this action is a declaration that the road in question is 'not a town road'. Certain fixed legal rights and obligations are dependent upon such a determination." (See, also, *County of Sullivan v Filippo,* 64 Misc 2d 533, 551, explaining *County of Albany v Hooker,* 204 NY 1, *supra.)*

4. Recently the Court of Appeals held that a private citizen taxpayer has standing to challenge the constitutionality of legislative acts *(Boryszewski v Brydges,* 37 NY2d 361). Whether this will automatically extend to a municipality is not clearly discernible (see Survey of New York Practice, 50 St John's L Rev 575, 616).

5. It is well established that the Fourteenth Amendment does not apply to a city in a suit against a State or State agency *(Williams v Mayor,* 289 US 36, 41; *Williams v Eggleston,* 170 US 304, 310).

viability. By their allegations, the plaintiffs have demonstrated that a direct, immediate, personal and pecuniary injury has been visited upon the municipality. It is indicative of a vital and immediate interest in the outcome of the litigation.

The standing requirements of this State have been relaxed by the Court of Appeals so as to give a party the right to sue where a denial of standing would result in an impenetrable barrier to judicial review of unlawful official action *(Matter of Abrams v New York City Tr. Auth.,* 39 NY2d 990; *Boryszewski v Brydges,* 37 NY2d 361, 364, *supra).* To deny standing to the plaintiffs in the instant case would construct such a barrier to the Long Beach community, which is, in a practical sense, the real plaintiff in this action.

The next issue on this appeal is whether the plaintiffs have failed to exhaust their administrative remedies. Special Term found the defendants' argument to be wholly without merit. We agree. The plaintiffs attempted an out-of-court resolution of their dilemma by arranging meetings with the Regional Director of the Department of Mental Hygiene. Such attempts were apparently unsuccessful. Further negotiations did not indicate promising results. The plaintiffs are not required to exhaust administrative remedies, if any are available, where an attempt to do so would be an exercise in futility (see *Usen v Sipprell,* 41 AD2d 251). Moreover, the defendants have not alluded to any administrative remedies which should have been pursued by the plaintiffs. It is difficult to perceive what specific administrative remedies were available to the plaintiffs. Where there are no administrative remedies to exhaust, the doctrine does not apply.

The final issue advanced by the defendants is whether the plaintiffs have a cause of action. The plaintiffs' complaint contains factual allegations of a justiciable controversy (see CPLR 3001). The pleading does not fail for lack of precision or definiteness (see CPLR 104, 3026).

The order appealed from should therefore be affirmed.

HOPKINS, Acting P. J., MARGETT, DAMIANI and SHAPIRO, JJ., concur.

Order of the Supreme Court, Nassau County, entered November 5, 1975, affirmed, without costs or disbursements.